## No. 7900.

## THE TERRE HAUTE AND INDIANAPOLIS R. R. CO. v. CLARK, ADMINISTRATOR.

PRACTICE.—*Answers to Interrogatories. — Verdict.—Judgment Non Obstante.—Bill of Exceptions.—Supreme Court.*—An exception to the ruling upon a motion for judgment upon answers to special interrogatories, notwithstanding the general verdict, presents such question to the Supreme Court without any bill of exceptions.

NEGLIGENCE.—*Railroad.—Rate of Speed of Trains.*—In an action by the administrator of a decedent against a railroad company for causing his death at a railroad crossing, by negligently running a train of cars over such crossing, the rate of speed of such train, in connection with other circumstances, may be considered in determining the question of negligence; but the rate of speed at which a train can be run with safety to the passengers can not, in itself, be deemed negligence as against one who is injured thereby at such a crossing.

SAME.—*Contributory Negligence.—Damages.*—Where, in such action, it is shown that the deceased, possessed of all his faculties, and knowing the existence and location of the railroad, and presumably familiar with the time of the trains running thereon, approached the railroad

crossing in a covered wagon, with no opening except in front, without stopping still at any point to look or listen for an approaching train, and, for a distance of more than forty yards from such crossing, drove his team in a trot, without stopping or looking, until he reached the crossing where he was run over and killed, such conduct is contributory negligence on the part of the deceased, and is sufficient to bar an action by his administrator to recover damages for his death.

From the Hendricks Circuit Court.

*J. G. Williams* and *L. M. Campbell*, for appellant.

*J. V. Hadley*, *J. O. Parker*, *E. G. Hogate* and *R. B. Blake*, for appellee.

WOODS, J.—The action was by the appellee against the appellant for causing the death of William Spaulding, the appellee suing as administrator of the estate of the deceased.

The complaint is in two paragraphs.

In both paragraphs it is shown that on the 30th day of January, 1878, the said William Spaulding was travelling in his wagon, drawn by two horses, along a public highway leading from the Cumberland road, in Hendricks County, Indiana, to the town of Danville, in the same county, which highway is known as the "Danville and Cartersburg Gravel Road," and crosses defendant's railroad in the midst of the town of Cartersburg, in said county of Hendricks.

The gravamen of the cause of action is stated in the first paragraph as follows, viz. :

"And the plaintiff says that, as the said William Spaulding had reached the said crossing in said town of Cartersburg, the defendant carelessly and negligently caused one of its locomotives, with a train of cars attached thereto, to approach said crossing, and then and there pass at a great and unusual rate of speed over the track of said railroad, and without proper care, and negligently and carelessly omitted, while so approaching said crossing, to give any reasonable, timely or proper signals, by ringing the bell or sounding the steam whistle at a reasonable and proper distance from said crossing, by reason whereof he. (Spauld-

ing) was unaware of their approach, and that, by reason of said negligence and carelessness of said defendant, her servants and employees, and, without any fault or negligence on his part, the said locomotive struck his horses and wagon on said crossing, thereby injuring said horses and demolishing said wagon, and instantly killing said William Spaulding.''

In the second paragraph of the complaint the same state of facts is shown, but the defendant is charged with having ''carelessly, recklessly, purposely, wilfully and negligently'' caused the death of Spaulding.

The answer was a general denial. Two trials by jury were had. The first jury failed to agree. The second gave a general verdict for the plaintiff, assessing the damages at one thousand dollars, and judgment was given accordingly. The jury returned answers to special interrogatories, and on these the appellant moved for judgment, notwithstanding the general verdict, and excepted to the overruling of the motion. No bill of exceptions was filed to show this exception; and counsel for the appellee claim that no question is saved for the consideration of this court. The point has been ruled against the position of counsel in *Salander* v. *Lockwood*, 66 Ind. 285, overruling, in this respect, *Shaw* v. *The Merchants National Bank*, 60 Ind. 83, and following, though not citing, *Campbell* v. *Dutch*, 36 Ind. 504.

The counsel for the appellant insist that the answers to interrogatories show affirmatively that the defendant was not guilty of the negligence charged; and that the deceased was guilty of negligence, causing or contributory to the cause of his death.

The following are the interrogatories and answers of the jury, so far as pertinent to the questions to be decided:

''1. If the deceased, William Spaulding, had stopped his team at any point within a distance of 150 yards from the railroad crossing, could he have heard the sound of the approaching train? Answer. Yes.

"2. If the deceased had approached the railroad crossing, driving only in a walk, and had looked out for the train at a distance of 30 feet therefrom, could he have stopped his team before reaching the track? Answer. Yes.

"3. If the deceased had looked in a westerly direction, at a point 60 feet south of the crossing, could he have seen the approaching train in time to stop his team before reaching the track? Answer. No.

"4. Was the defendant's train, on the evening of the 30th of January, 1878, at the time of the death of said Spaulding, being run at a greater rate of speed than was usual or customary for that particular train, at that hour of the evening? Answer. No.

"5. Had not the defendant, for a long period of time prior to the 30th of January, 1878, run a fast mail and express train east at about the same hour each evening, and at about the same rate of speed at which the train was going on said January 30th? Answer. Yes.

"6. Could the deceased, by the use of ordinary care and prudence, on the evening of said date, have stopped his team before reaching the railroad crossing, and avoided the accident? Answer. No.

"7. Did not the agents of the defendant, in charge of the train which killed the deceased, sound the whistle and give the signal at the usual distance from the crossing, viz., about 800 feet west from the same? Answer. Yes.

"8. Did not the deceased, at a distance of more than one hundred feet south of the crossing, hear the sound of the approaching train, and attempt to cross the track before it? Answer. No evidence.

"9. Did the engineer in charge on the 30th of January, 1878, see the deceased about to drive upon the track, or did he have reason, from what he saw, to suppose the deceased was about to drive upon the track, in sufficient time to stop his train and prevent the collision? Answer. No.

"10. Did not the deceased drive his team in a trot towards the railroad crossing, for the distance of more than forty yards, without stopping to look or listen for an approaching train? Answer. Yes.

"11. Did not the deceased drive on the railroad crossing without stopping still at any point to look or listen for an approaching train, and was he not at the same time in a covered wagon, without any opening except in front? Answer. Yes.

"12. What direction was the train going by which Spaulding was killed? Answer. East.

"13. What direction was the wind blowing on said evening? Answer. From the east.

"14. Was it not snowing considerably at the time the deceased drove on the railroad track and was killed? Answer. Yes."

There is not enough shown by these answers to interrogatories to enable us to say, as matter of law, that either the appellant or the deceased was free from negligence, causing or contributing to the injury. All that is found concerning the conduct of the appellant is in questions 4, 5, 7 and 9, and the answers thereto, but, notwithstanding these, there may have been proof of negligence. For instance, while it is shown that the whistle was blown eight hundred feet or more away, it is not found that the bell was rung as the train approached the crossing. The rate of speed is not found, and, though that train was not running faster than usual, its usual rate may have been very great, too great to be safe or justifiable. We do not mean to be understood as saying or intimating that any rate of speed, at which a train can be run with safety to the passenger, can in itself be deemed carelessness as against one who gets hurt at a crossing. The tendency of the times seems to be—indeed, the sentiment now apparently prevails—that the railroads shall run trains for carrying the passengers and mails at high

The Terre Haute and Indianapolis R. R. Co. v. Clark, Administrator.

rates of speed, and the rights of individuals, and the degree
of caution which they must use in passing over the railroad
tracks, must be measured and adjusted accordingly. Still, it
is, and doubtless will remain, true that the rate of speed, in
connection with other circumstances, may be considered in
determining the issue of negligence in such cases as the one
under consideration.

It remains to be considered whether the deceased was free
from fault. It is not found that he knew there was a rail-
road in the vicinity, and did not come upon it all unaware
of the train's approach. He drove his team in a trot
towards the crossing for the distance of more than forty
yards, without stopping to look or listen ; but this may, for
all that is found, have happened before he came within
a mile or ten miles of the crossing. He drove on the rail-
road crossing without stopping still at any point to look or
listen, but there is no rule which requires a man with a team
to stop still. It would in many cases, perhaps, be impossi-
ble to do so, and, under supposable circumstances, it would
not be necessary to stop, either to look or listen.

We think it quite clear that the court committed no error
in overruling the appellant's motion for judgment on the
special findings, notwithstanding the general verdict.

The appellant made a motion for a new trial, on written
reasons filed, viz., that the verdict is not sustained by suffi-
cient evidence, and is contrary to law, which the court over-
ruled. This motion, we think, should have been sustained.
There was no real conflict in the evidence, and what is lack-
ing in the special findings to show negligence on the part of
the deceased is fully supplied in the evidence, and there is no
evidence at all to support the charge in the second paragraph
of the complaint, that the defendant purposely and wilfully
caused the death. Indeed, it is by no means clear that the
evidence shows any negligence on the part of the defendant.
But it does show that the deceased, possessed of all his fac-

ulties, and knowing the existence and location of the railroad, and presumably familiar with the time of the fast train, which had been running regularly for some time before, approached the crossing in a covered wagon, with no opening except in front. When about fifty yards from the crossing, he was seen by one witness to check his team, lean forward and look to the east and to the west, and thence he drove on in a trot, without stopping or looking until he reached the crossing, at which instant the horses stopped for a moment, whether through fright or the pulling of the lines by the deceased, is uncertain, and then sprang across the track, the engine striking the wagon and instantly killing said Spaulding. On the west side of the highway on which the deceased approached the crossing, there were, in some places, buildings which obstructed the view in the direction of the railroad to the westward, and one of these buildings stood but thirty feet south of the railroad track. The other material facts are shown by the answers to the interrogatories. If the deceased heard the coming train, as many of the witnesses heard it, as he approached the crossing, his death was either a suicide or the result of gross carelessness; but, whether he heard it or not, his driving upon the crossing in a trot, under the circumstances, was certainly such contributory negligence on his part as bars the action of his administrator for his death.

The counsel for the appellee insist that the presence of the houses obstructing the view, and the fact that it was snowing, were circumstances that made it gross negligence on the part of the appellant to move its train at the rate of speed at which it was running at the time of the accident. It seems to us, on the contrary, that these were circumstances which enhanced the degree of caution with which the deceased ought to have approached the crossing.

The judgment of the circuit court is reversed, with costs, and with instructions to grant a new trial.