Locke *v.* Falk *et al.*

No. 8272.

LOCKE *v.* FALK ET AL.

EVIDENCE.—*Account.—Principal and Agent.*—In an action for goods sold and delivered, where the plaintiff introduced evidence tending to show that the defendant had given another authority to purchase goods to

Locke *v.* Falk *et al.*

carry on defendant's business, it was competent to prove what direction as to shipment was given by such agent at the time he ordered said goods of the plaintiff.

SUPREME COURT.—*Verdict.*—*Weight of Evidence.*—The Supreme Court will not disturb a verdict on the mere weight of the evidence.

From the DeKalb Circuit Court.

*R. W. McBride*, *W. H. Lease*, *J. E. Rose* and *E. D. Hartman*, for appellant.

*W. H. Dills* and *W. L. Penfield*, for appellees.

MORRIS, C.—This suit was brought by the appellees against the appellant, for goods sold and delivered. The appellant answered the complaint by a general denial. The cause was submitted to a jury, and a verdict returned in favor of the appellees. The appellant moved the court for a new trial, on the ground that the verdict was contrary to law, and not sustained by sufficient evidence. The court overruled the motion. The evidence is in the record by bill of exceptions.

The appellant assigns as error the overruling of his motion for a new trial. If there is any testimony legally tending to support the verdict, this court will not disturb it on the weight of the evidence. *The Fort Wayne, etc., R. R. Co.* v. *Husselman*, 65 Ind. 73 ; *Leary* v. *Ebert*, 72 Ind. 418 ; *Sohn* v. *The Marion, etc., G. R. Co.*, 73 Ind. 77 ; *Kelly* v. *Northington*, 73 Ind. 152.

Moses Lamley, one of the appellees, testified on the trial that he sold the goods to one Carter, who stated that he was buying for the appellant; that the goods were charged to the appellant; that they were sold for a fair price; that the appellant was doing business at Waterloo and at Auburn; that small bills had been purchased of the appellees by Carter for the appellant, Locke ; that he sometimes gave notes for such purchases, in the name of Locke, he signing Locke's name to the notes ; that payments had been made, but that he did not know whether Locke or Carter made the payments ; that he had been in appellant's place

of business in Auburn several times; saw him there once, and always noticed that the sign of the door was "S. J. Locke;" that he met Locke twice; that the last barrel of whisky mentioned in his bill of items was returned to him March 11th, 1878, and he had given the appellant credit for it; that he met Locke at his place of business in Auburn, and that Locke asked him if he had sold the goods; said that he did not want that barrel of whisky, and witness took it back and gave him credit for it; that the license to sell in Auburn was in Locke's name; that Carter was the brother-in-law of Locke. The witness further testified as follows: "I remember of Locke telling me, at Waterloo, not to sell any more goods to Carter, but the last barrel had been shipped before I got back to Fort Wayne; that was the first time that Locke ordered me not to sell any more to Carter; I charged the goods to Locke because Carter told me the business belonged to Locke; I had two conversations with Locke; in the first conversation, more than four months before the last sale, he asked me if I was selling in Auburn; I told him we were; he said the business was not paying well; the license of Locke was to sell liquor in Auburn, at the place where the liquor we sold him was delivered or sent." Locke's license to sell at that place was also put in evidence.

Edward Eldridge testified that Locke was carrying on the liquor business in Auburn, from June, 1875, until a short time before the suit was commenced. Upon the trial, Lamley's counsel asked him this question: "What direction, if any, was given you by Carter at the time he ordered said goods, as to their shipment?" To this question the appellant objected, on the ground that it was incompetent and improper. The court overruled the objection and he excepted. The witness then answered it.

It had been shown that Locke was doing business in Auburn; that he stayed most of the time at Waterloo, and that

Carter attended to the business in Auburn; that Carter had purchased liquors of the appellees and others, and that Locke knew it; that Locke had a license to carry on the liquor business in Auburn, and that Carter had not. From these facts it might be inferred that Carter had authority from Locke to make purchases of liquor for the business at Auburn. There was evidence enough to submit the question to the jury. The question put to Lamley and answered by him related to the business which he was then, *prima facie*, authorized to transact for Locke, and was entirely competent. Locke told Lamley, after the sales had been made, not to sell Carter any more. This statement not only implies that he knew that sales had been made upon the orders of Carter, but that Carter had authority to give the orders.

Nor can we disturb the verdict on the weight of the evidence. If the case had gone to the jury on the testimony produced by the appellees, it could not be said, we think, that the jury would not have been authorized to return a verdict for them. True, the testimony introduced by the appellant not only contradicted that put in by the appellees, but strongly tended to show that Carter had in fact no authority to buy liquor in Locke's name, and that, as soon as Locke ascertained that he was doing so, he turned him off. But the fact that he turned him off, that the business was, according to their testimony, carried on fraudulently and in violation of law, greatly diminishes the force of the testimony of the appellant. We can not weigh this conflicting testimony. Nor do we believe that, by indulging the presumption that, in this case, the jury reached the truth, injustice will be done.

Per Curiam.—It is ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of the appellant.