The Pittsburgh, Cincinnati and St. Louis Railway Company *v*. Martin.

## No. 9475.

# THE PITTSBURGH, CINCINNATI AND ST. LOUIS RAILWAY COMPANY *v*. MARTIN.

NEGLIGENCE.— *Complaint.*— *Railroad Crossing.*— *Highway.*— A complaint against a railway company for injury to the plaintiff at a highway crossing, which avers that the defendant negligently caused its trains of cars to pass the crossing at unusual speed, and negligently omitted to give any timely signal of its approach by bell or whistle at a proper distance, by reason whereof, etc., is sufficiently specific as to the defendant's negligence.

SAME.—*Instruction.*—An instruction, that a failure of a railway company to sound the whistle at least eighty rods before reaching a highway crossing (the act of 1879, Acts 1879, p. 173, being in force) was negligence, and if by reason thereof the plaintiff was injured, without negligence on his part, the verdict should be for the plaintiff, was held correct.

SAME.—*Contributory Negligence.*—While the statute of 1879 was in force, a violation of it was negligence; and where the evidence showed this, an instruction, that if there were obstacles to prevent the seeing of an approaching train until the plaintiff got near the railroad, it was his duty to stop before reaching it, and look and satisfy himself that no train was approaching, and if he did not, but by so doing he could have seen the train, he was negligent, and could not recover, was properly refused.

PRACTICE.—*Amendment.*—*Parties.*—A complaint may be amended before answer and without leave, by substituting a different person as plaintiff.

SAME.— *Verdict.*—*Special Findings.*—In considering a motion for judgment on special findings, notwithstanding a general verdict, no reference can be had to the evidence given, but if by any conceivable evidence admissible under the issues, the special findings can be reconciled with the general verdict, the motion should be denied.

SAME.—*Argument of Counsel.*—*Discretion of Court.*—After the close of the evidence, one of the plaintiff's counsel addressed the jury, whereupon the defendant's counsel being, on inquiry, told by the associate counsel for the plaintiff, that he did not wish to say anything in the opening, declined to make any answer, whereupon said associate, over the defendant's objection, also addressed the jury, and then the defendant's counsel declined to argue.

*Held*, that the discretion of the court was not abused, and there was no error.

SAME.—*Improper Remarks.*—Improper remarks of counsel in argument, to which no objection is made at the time, will not warrant a new trial.

INSTRUCTIONS.—When the court has given an instruction, substantially such as a party asks, it may refuse the latter.

From the Howard Circuit Court.

*N. O. Ross,* for appellant.
*J. W. Kern,* for appellee.

BICKNELL, C. C.—This was a suit, by the appellee against the appellant, to recover damages for a collision.

The plaintiff recovered six hundred dollars; the defendant appealed.

The first error assigned by the appellant is, that the court refused to strike out the amended complaint. The complaint had been amended by substituting Henry Martin for John Martin as plaintiff; this was done before the complaint was answered and without obtaining leave of court therefor.

Amendments, made after answer, require leave of court, but any pleading may be amended, of course, before it is answered. Civil Code, section 97.

In *Hubler* v. *Pullen,* 9 Ind. 273, the court below had permitted, after answer, an amendment of the complaint by the substitution of two new plaintiffs in place of the original two. This court sustained that action, and said: "By the mere change of names, the cause of action stated in the complaint could not be substantially varied." If such an amendment can be made, by leave of court, after answer, it may, under section 97, *supra,* be made of course, before answer. There was no error in this particular.

The second assigned error is, that the court erred in overruling the motion that the complaint be made more specific, by stating in what the negligence and carelessness, complained of, consisted.

The complaint avers, that, as the plaintiff "reached the said crossing, the defendant negligently and carelessly caused one of its locomotives, with a train of cars attached thereto, to approach said crossing, and then and there to pass, at a great and unusual rate of speed, over the track of said railroad, and without proper care, and negligently and carelessly, omitted, while so approaching said crossing, to give any reasonable, proper or timely signal, by ringing the bell, or sounding the

steam whistle, at a reasonable and proper distance from said crossing; by reason whereof he was unaware of its approach, and by reason of said negligence and carelessness of said defendant, and without any fault on his part, the said locomotive struck his wagon on said crossing," etc.

This was sufficiently specific. *Ohio, etc., R. W. Co.* v. *Selby,* 47 Ind. 471 (17 Am. R. 719). There was no error in this particular.

The third assigned error is that the court erred in overruling the demurrer to the complaint. The demurrer was for want of facts sufficient, etc. The complaint was sufficient. *St. Louis, etc., R. W. Co.* v. *Mathias,* 50 Ind. 65; *Toledo, etc., R. W. Co.* v. *Shuckman,* 50 Ind. 42; *Terre Haute, etc., R. R. Co.* v. *Clark,* 73 Ind. 168.

The fourth assigned error is that the court overruled the defendant's motion for judgment on the special findings, notwithstanding the general verdict for the plaintiff.

The answer to the complaint was the general denial. The general verdict was for $700. The special findings were as follows:

"1. Is the plat or drawing hereto annexed a correct representation of the crossing of the highway by the railroad at the point where the injury complained of was inflicted? Ans. In part.

"2. Did the plaintiff approach the crossing, travelling along the highway, coming from the east? Ans. Yes.

"3. Was the train that inflicted the injury approaching the crossing from the southeast? Ans. Yes.

"4. Was the vision obstructed at the time, so that the plaintiff, coming along the highway from the east, could not see the train approaching from the southeast, until he came up near the crossing? Ans. Yes.

"5. At what distance from the railroad track, where the highway crosses it, could the plaintiff, approaching from the east, first see a train of cars approaching from the southeast along the railroad track? Ans. Ten steps.

" 6. Does the railroad, running southeast from the crossing, run through a cut? Ans. Yes.

" 7. If you answer question 6 in the affirmative, then how far does it run through said cut from said crossing, and what is the depth of the cut? Ans. About forty rods; from three to twelve feet.

" 8. Was the plaintiff hard of hearing at the time of·the accident? Ans. No.

" 9. Did plaintiff look for the train in the direction from which it was coming, before he drove his team upon the crossing? Ans. Yes.

" 10. If you answer question 9 in the affirmative, how far was his team from the crossing when he looked? Ans. About two feet.

" 11. How far was the locomotive from the crossing when the plaintiff first saw it? Ans. About ten rods.

" 12. At what rate of speed was the train running at the time? Ans. About twenty-five miles per hour.

" 13. Did plaintiff know of the existence of the railroad, and the direction in which it ran? Ans. Yes.

" 14. Was the whistle sounded as the train approached the crossing at the time of the accident? Ans. No, except two quick, sharp sounds.

" 15. Could the engineer have prevented the collision after he saw the approach of the plaintiff? Ans. No.

" 16. What means did the plaintiff use to escape the danger after he saw it? Ans. By rising to his feet and applying his whip to his horses.

" 17. How much of the plaintiff's damages do you allow for his suffering caused by the injury? Ans. $200.

" 18. How much for loss of time in getting cured? Ans. $100.

" 19. How much for expenses during his illness, caused by the injury, and in getting cured of it? Ans. $100.

" 20. How much do you assess for loss of ability to labor? Ans. $300.

" 21. For how many years do you estimate his loss of ability to labor, and how much per year? Ans. Three years, at $100 per year.

" 22. What was the plaintiff's age at the time of the injury? Ans. Seventy-one years."

The plaintiff remitted $100 of the verdict, to wit, the sum mentioned in the answer to interrogatory No. 19, as allowed for expenses in getting cured of his injuries.

The appellant claims that the special findings show negligence in the appellee:

1st. In not looking for a train sooner.

2d. In attempting to cross after he saw it.

The rules which govern motions for judgment *non obstante* are as follows:

The special findings of the jury override the general verdict only when both can not stand. Their antagonism must be apparent on the face of the record, so as to be incapable of removal by any evidence legitimately admissible under the issues; otherwise, the general verdict will control. *Scheible* v. *Law,* 65 Ind. 332, and cases there cited; *Terre Haute, etc., R. R. Co.* v. *Clark,* 73 Ind. 168.

The court will not presume anything in aid of the special findings, but will make every reasonable presumption in favor of the general verdict. *Ridgeway* v. *Dearinger,* 42 Ind. 157; *McCallister* v. *Mount,* 73 Ind. 559.

In considering the motion for judgment *non obstante,* no reference can be made to the evidence given on the trial; the question is not whether the evidence will sustain the verdict; that question belongs to the motion for a new trial. The general verdict prevails over the special findings, if there could have been, under the issues, proof of supposable facts, not inconsistent with those specially found, sufficient to reconcile the general verdict with the special findings. *Stevens* v. *City of Logansport,* 76 Ind. 498; *Higgins* v. *Kendall,* 73 Ind. 522; *Bellefontaine R. W. Co.* v. *Hunter,* 33 Ind. 335 (5 Am. R. 201); *Byram* v. *Galbraith,* 75 Ind. 134, and cases there cited.

The Pittsburgh, Cincinnati and St. Louis Railway Company v. Martin.

Under the foregoing rules, it is clear that there is no irrecon-cilable inconsistency between the general verdict and the special findings. There was no error in overruling the appellant's motion for judgment, notwithstanding the verdict.

The last error assigned is, that the court erred in overruling the motion for a new trial. The first reason for a new trial is, that the court permitted the plaintiff's counsel to make a second opening argument to the jury, after the close of the evidence, and after the counsel for the defendant had declined to reply to the first opening argument after the close of the evidence. The bill of exceptions shows that one of the plaintiff's counsel, after the close of the evidence, addressed the jury, and when he had finished, the defendant's counsel asked the plaintiff's associate counsel, if he wished to say anything further in opening the case, who replied that he did not, and the defendant's counsel then declined to reply to the argument already made; whereupon the plaintiff's said associate counsel was permitted by the court, over the defendant's objection, to address the jury in continuation of the opening argument, and when he had finished, the defendant declined to argue the case.

In *Priddy* v. *Dodd*, 4 Ind. 84, the plaintiff's counsel addressed the jury the defendant declined to reply the plaintiff then claimed the right to close the argument, which the court refused to permit. This court, on appeal, affirmed the ruling of the inferior court, and said that such matters are much in the discretion of the trial court, and that the discretion did not appear to have been abused. STUART, J., giving the opinion of the court, said: "There is * a strong common sense in support of the action of the court. The plaintiff had already an opportunity to present his case to the jury, which the record shows he had embraced fully, and rested. If he did not put the jury in possession of his views, it was his own fault. He has but fallen into the snare he had, perhaps, spread for his opponents. It was no invasion of the rights of any one

VOL. 82.—31

for the court to hold, that the struggle thus closed could not be renewed."

Whether such a second speech be termed a continuation of the opening or a close of the argument, the substance of the proceeding is the same; it may have been an effort to gain the advantage, but the matter being in the discretion of the court below, a ruling either way ought not ordinarily to be reversed by this court.

The second reason for a new trial is that the court permitted the plaintiff's counsel to speak of the defendant as a gigantic corporation owned by Tom Scott, having its employees in court, branded on their backs with the letters P. C. & St. L.

The record does not show that the defendant's counsel objected to such remarks when they were made, or called upon the court to stop them. If the court, on a proper request, had refused to interpose and put a stop to improper remarks, an exception to such refusal would have been available, but where such remarks are permitted to be made, without objection, and without calling upon the court to interfere, the impropriety of the language will not warrant a new trial. *St. Louis, etc., R. W. Co.* v. *Myrtle*, 51 Ind. 566, and cases there cited.

The third reason for a new trial is, that the court erred in giving to the jury, of its own motion, instruction No. 2, which is as follows:

"It was the duty of the engineer, or those in charge of the train, on approaching a highway, to sound the whistle on such engine, at least eighty rods before reaching said crossing, and if they failed to do so, and accident and injury occurred therefrom, this would be negligence on the part of such railway company, and if you believe, from a preponderance of the evidence, in this case, that the defendant, by her employees running the train from which said accident occurred, failed to so sound said whistle, and by reason of such failure said ac-

cident occurred, without negligence on the part of the plaintiff, then, in that case, you should find for the plaintiff."

The complaint averred in substance, amongst other matters, that when the plaintiff, travelling on the highway in a two-horse wagon, reached the crossing place of the railroad, at and in the village of Tarry Hall, the defendant, coming with the engine and cars toward that crossing, from the southeast, carelessly and negligently omitted to give any reasonable, proper or timely signal of its approach, whereby, etc., without any fault of the plaintiff, etc. There was evidence tending to sustain these averments, and to show that the engine, coming to the crossing at the rate of twenty-five miles an hour, gave no notice whatever of its approach, except two quick, sharp sounds of the whistle, when about 100 feet from the crossing.

The injury occurred in April, 1880. The law then declared what should be a reasonable, proper and timely signal in such a case. By the act of March 29th, 1879, Acts 1879, p. 173, the defendant was required, when distant eighty rods from such a crossing, to sound its whistle continuously until the crossing should be fully passed, and a neglect to do so was made a misdemeanor in the person having charge of the engine.

The court was bound to take notice of this law. The plaintiff had a right to believe the defendant would obey it. The plaintiff's view was partially obstructed; the track, for forty rods from the crossing, going southeast, was in a cut from three to twelve feet deep; the instruction under consideration informed the jury, in substance, that the violation of such a statute was negligence, and that if, from a preponderance of the evidence, they believed such negligence existed, and had produced the injury, without any contributory negligence of the plaintiff, they should find for the plaintiff.

While such a law existed, a violation of it was undoubtedly a failure to give reasonable, proper and timely notice. The signal required by the law not being given, the view being obstructed, and the plaintiff not being hard of hearing, he had no reason to suppose that the train was within eighty rods

of the crossing; he was misled by the defendant's negligence in omitting the proper signal; he was not guilty of negligence in assuming, in the absence of any indication to the contrary, that the company was obeying the law, and that no engine was advancing toward the crossing within a distance of eighty rods. *Kennayde* v. *Pacific R. R. Co.*, 45 Mo. 255; *Tabor* v. *Missouri Valley R. R. Co.*, 46 Mo. 353 (2 Am. R. 517); *Ernst* v. *Hudson River R. R. Co.*, 35 N. Y. 9; *Ernst* v. *Hudson River R. R. Co.*, 39 N. Y. 61.

We think there was nothing in instruction No. 2, given by the court of its own motion, of which the defendant had a right to complain.

The fourth reason for a new trial is the refusal of the court to give to the jury instructions asked for by the defendant; these instructions were numbered from 1 to 11; of these, numbers 1, 10 and 11 are not mentioned in the appellant's brief, and the objections thereto are regarded as waived.

No. 2 is discussed in the appellant's brief as No. 3, and is as follows:

"2. If you find that there were obstructions that prevented the plaintiff from seeing an approaching train, until he got near the railroad track, there was a greater necessity to satisfy himself that no train was approaching before attempting to cross, *and, if necessary*, it was his duty to stop his horses and look for approaching trains before entering upon the track; and if you find he failed to do so, and might have seen the train if he had, he was guilty of negligence, and can not recover."

This instruction was properly refused. It has been held repeatedly, that inability to use eyesight or hearing, ordinarily, demands more diligent exercise of the remaining sense, and the court had told the jury in its own instruction, No. 4, that if the plaintiff was hard of hearing, there was a greater necessity that he should use his eyesight to avoid danger, and had also told the jury in its own instruction,

No. 6, that if the plaintiff, by looking, could have seen the train approaching before he entered upon the track, and could thereby have avoided the accident, then both parties were guilty of negligence, and they should find for the defendant. It was said by this court in *Terre Haute, etc., R. R. Co.* v. *Clark*, 73 Ind. 168 : " There is no rule which requires a man with a team to stop still. It would in many cases, perhaps, be impossible to do so, and, under supposable circumstances, it would not be necessary to stop, either to look or listen." In the present case, there was evidence tending to show that the train could not be seen coming from the southeast until the plaintiff was within thirty feet of the track; that immediately afterwards he heard the two sharp, quick whistles, and saw the train; that his horses' forefeet were then over the first rail, and the train within a hundred feet of the highway, coming at the rate of twenty-five miles an hour, at least thirty feet in a second. It was no time to stop horses then; the plaintiff, no signal having been given, was lawfully there, and there was no evidence tending to show that he could have backed or turned on that ground, in time to avoid the collision. There was no error in refusing the instruction No. 2, asked for by defendant. The appellant cites the case of *Terre Haute, etc., R. R. Co.* v. *Clark, supra,* but that is a very different case; there the usual signal had been given, and the plaintiff had driven his horses in a brisk trot, for forty yards, just before reaching the crossing where the train struck him.

Instruction No. 3, asked for by the defendant, was given by the court.

Instruction No. 4, asked for by defendant, was substantially given by the court in its own instruction No. 4.

Instruction No. 5, asked for by the defendant, was given by the court.

Instructions Nos. 6 and 7, asked for by the defendant, were substantially embraced in the court's own instruction No. 6, which was as follows: " If you find that the defendant was

guilty of negligence in failing to sound the whistle and ring the bell, and that the plaintiff, by looking, could have seen the train approaching, before he entered on the track, and thereby could have avoided the accident, then both parties were guilty of negligence, and you should find for the defendant."

Instruction No. 8, asked for by defendant, is as follows: "If you find that the defendant did not sound the whistle for eighty rods continuously, before crossing the highway, when the accident occurred, yet the plaintiff is' not entitled to recover, if you find that he could have seen the cars before he entered upon the track, and if he could not see the train until near the track, there was a greater necessity for him to stop, *if necessary*, and look in the direction from which the train was coming before driving upon the track."

This instruction was also properly refused. If, as the evidence tended to show, the plaintiff could not hear the train because there was no signal, and could not see the track because of obstructions, and did not know there was a train within five miles in any direction, it would only mislead and confuse the jury to tell them that the plaintiff was bound, if necessary, to stop and look in the direction in which the train was coming.

The only remaining instruction, asked for and refused by the defendant, and referred to in the appellant's brief, is the instruction numbered 9, which is as follows:

"If you find that the plaintiff, when within thirty feet of the crossing, by looking in the right direction, could have seen the train coming, and failed to do so, he can not recover."

We think this instruction ought not to have been given. The court had already told the jury in its own instruction No. 6, that if the plaintiff, by looking, could have seen the train approaching before he entered upon the track, and *could thereby have avoided the injury*, then both parties were guilty of negligence, and they should find for the defendant.

Under the authorities hereinbefore cited, there was no error in refusing any of the instructions asked for by the defendant and refused by the court. See *Continental, etc., Co.* v. *Stead,* 95 U. S. 161.

The instructions given, taken together, were more favorable to the appellant than the law strictly required.

The only remaining cause for a new trial, which is discussed in the appellant's brief, is, that the verdict is not sustained by sufficient evidence.

The jury have found by their verdict, that the negligence of the appellant caused the injury complained of, and that there was no negligence of the appellee contributing to said injury. These were questions for the consideration of the jury. *Craig* v. *New York, etc., R. R.,* 118 Mass. 431; *Peoria, etc., R. R. Co.* v. *Siltman,* 88 Ill. 529. There being testimony tending to support the verdict, this court can not reverse the judgment on the weight of the evidence. *Abshire* v. *Williams,* 76 Ind. 97; *Talbott* v. *Kennedy,* 76 Ind. 282; *Locke* v. *Falk,* 76 Ind. 520. But we think the verdict is right upon the evidence. It does not appear that the plaintiff could have secured safety by stopping and trying to back or turn his team, when first he discovered the train, but if it did so appear, it would not change the result, under the circumstances of this case. When a railroad company, by its own negligence, misleads a traveller, and puts him in peril of his life, and the traveller in the excitement of that peril, and in his honest efforts to escape, makes a mistake, and is injured, such an error of judgment is not contributory negligence.

The judgment of the court below ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellant.