## WENDEL *v.* CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

[No. 6,137. Filed November 8, 1907. Petitions for rehearing denied January 30, and March 31, 1908.]

1. TRIAL. —*Verdict.—General.—Interrogatories.—Railroads.—Highway Crossings.—Contributory Negligence.*—An answer to an interrogatory, in a railroad- and highway-crossing case that deceased, as he approached the crossing, had his cap pulled down over his ears, does not constitute such contributory negligence as to overthrow a general verdict for plaintiff, there being no showing that the cap interfered with the decedent's hearing, and the presumptions being in favor of the general verdict. p. 463.

2. SAME. — *Verdict. — General.—Interrogatories.*—The interrogatories overthrow the general verdict only when both cannot stand; and the conflict must be apparent on the face of the record, and must be incapable of being removed by any admissible evidence. p. 463.

3. RAILROADS.—*Highway Crossings.—Failure to See Approaching Train.—Contributory Negligence.*—The failure of a boy, who was driving a team drawing an empty hay wagon eighteen feet long over an elevated railroad crossing, to see a train, running at the rate of seventy-five miles an hour, where he had an unobstructed view of the track after he came within twenty-five feet thereof, does not constitute him guilty of contributory negligence as a matter of law, especially where he stopped, looked and listened fifty feet from the crossing. p. 463.

4. SAME. — *Reversal. — Mandate. — Interrogatories. —Contributory Negligence.—Statutes.—New Trial.*—Where, in an action for personal injuries, defendant was awarded judgment on the answers to the interrogatories notwithstanding the general verdict, but said answers left uncertain the question of plaintiff's contributory

negligence, the Appellate Court, in reversing said judgment may, in its discretion, by virtue of the provisions of §702 Burns 1908, §660 R. S. 1881, order a new trial instead of directing a judgment on the general verdict. p. 465.

From Shelby Circuit Court; *Will M. Sparks,* Judge.

Action by John Wendel against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for defendant notwithstanding a general verdict for plaintiff for $1,400, plaintiff appeals. *Reversed.*

*D. L. Wilson* and *R. W. Harrison,* for appellant.
*Carter & Morrison,* for appellee.

RABB, J.—The appellant sued appellee to recover damages for the death of his minor son, charged in the complaint to have been killed in a collision with a fast train on appellee's road, brought about through the negligence of appellee. It is alleged in the complaint that the deceased was traveling along a public highway, on an empty hay wagon eighteen feet long, drawn by two horses; that the highway intersected the appellee's road at an acute angle; that a fence and cattle-guard on one side of the highway, and a deep ditch on the other, reduced the width of the highway at and near the intersection with the railroad to such an extent that there was not room to turn a wagon drawn by two horses; that the approach to the railroad was up an embankment from five to ten feet high; that the deceased was familiar with the train signals; that his sight, hearing and intelligence were good; that he was a skilful and prudent driver; that for a quarter of a mile before reaching the crossing he approached the same at a slow gait, constantly looking and listening for the approach of trains on the railroad; that when within fifty feet of the track he stopped and looked in both directions, and listened for trains, and, seeing nothing and hearing nothing indicating the approach of a train, he started to drive up the embankment on the top of which was the railroad track, at all

times looking and listening for a train; that at the same time appellee's train was approaching the crossing, coming down grade with steam shut off, at the rate of seventy-five miles per hour, and without sounding the statutory signals; that, on account of the condition of the weather and the noise made by the wagon, the deceased was unable to see or hear the approaching train until his team was on the crossing, when he could neither back his team nor turn around; that the team became frightened at the train and swung around to the east, on the crossing, and deceased was struck by the train.

A jury trial was had and a general verdict returned in favor of appellant, and with it answers to certain interrogatories propounded to the jury. The court, on appellee's motion, rendered judgment in its favor on the answers to the interrogatories notwithstanding the general verdict, over the objection and exception of appellant, and this ruling presents the sole question arising in this case.

The only fact found by the jury that it could be fairly claimed tends to antagonize the general verdict of the jury is their answer to the somewhat involved and obscure interrogatory twenty-three, which, in connection with the answers to other interrogatories, it is asserted, shows that the deceased could, by looking, have seen the approach of the train when he was between twenty-four and twenty-five feet from the railroad track, and the train 500 feet from the crossing.

Interrogatories twenty-three and twenty-seven, with their answers, read as follows:

"(23) When the plaintiff's son was one foot south of the line of the telegraph poles, measured from the south side of the poles, how far up the railroad right of way towards Indianapolis could he have seen, had he then looked, the approaching train that struck him? A. 500 ft. (27) Was not the line of the telegraph poles about twenty feet from the north rail of defendant's track? A. Yes, about twenty-six feet."

It is true an answer to interrogatory fourteen shows that the boy at the time of the accident had on a cap pulled down over his ears, but this fact is unimportant. There is no finding that the cap in any manner interfered with the boy's hearing, and we are not to infer, against the general verdict, that it did. The rule is that all inferences, intendments and presumptions are to be indulged in support of the general verdict, and none in aid of contradictory answers to interrogatories. *Stevens* v. *City of Logansport* (1881), 76 Ind. 498; *Ohio, etc., R. Co.* v. *Trowbridge* (1890), 126 Ind. 391; *Smith* v. *Michigan Cent. R. Co.* (1905), 35 Ind. App. 188; *Ridgeway* v. *Dearinger* (1873), 42 Ind. 157; *McCallister* v. *Mount* (1881), 73 Ind. 559; *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476.

The answers to interrogatories can override the general verdict only when they both cannot stand, and the antagonism must be apparent on the face of the record, and incapable of being removed by any evidence legitimately admissible within the issues.

Does the fact that the deceased, had he looked when he was twenty-five feet from the railroad and the train 500 feet away, could have seen the approaching train that struck and killed him antagonize the general verdict? Appellee has cited a long list of cases in support of the judgment below, but one of which seems to have involved any question arising on a judgment on the answer to interrogatories. In the case of *Chicago, etc., R. Co.* v. *Reed* (1902), 29 Ind. App. 94, the answer to interrogatories found that the plaintiff, driving a gentle horse on a clear day, could have seen the train that struck her had she looked when she was fifty feet from the track. In all the other cases cited the question arose either on a special verdict, on the evidence, or on instructions given or refused by the court.

In favor of the general verdict, the court must presume in this case that the deceased, by looking and listening,

could have neither heard nor seen the train that killed him until he was within twenty-five feet of the track; that he stopped his team when fifty feet from the track, and looked and listened for an approaching train, and heard and saw none; that he kept looking and listening for approaching trains as he drew near the track. His hay wagon was eighteen feet long. How far in advance of the front of the wagon his horses' heads would be is not shown, but it is fair to presume that they were ten or twelve feet from the front end of the wagon. The jury may have found that the boy was seated near the rear end of the wagon, and twenty feet from his horses' heads, so that when he reached a point where he could, had he looked, have seen the approaching train, the horses would have almost reached the track. And the jury may have found that the boy did not see the train the instant he reached the point where it would have been visible, had he looked. It was his duty to look both ways, and he could not look both ways at the same time. He may first have turned his attention in the opposite direction, and he would not be guilty of negligence if his gaze was diverted for a few seconds in the opposite direction from which the train was approaching. If such was the case, his team would have been on the track before he saw the approaching train that struck him. And it may be that the jury found, and the evidence showed, that in that condition he was unable to control his horses. It may have appeared, under the circumstances as the jury found them to exist, that it was the safest and most prudent course the boy could have taken to undertake to drive his team over the track, rather than back out. It may have been the only thing the unfortunate lad could do. His situation was very different from that of a pedestrian, or one who had absolute dominion over the motive power drawing him. Here he had a team of horses, hitched to an unwieldy wagon, to deal with, surprised in a place of danger by the rapidly-moving train, and of whose speed he was not aware.

If the train had been traveling at the ordinary rate of a passenger-train, he could have safely crossed. Under the facts inferable from the general verdict, and those returned in answers to interrogatories, but three or four seconds elapsed from the boy's first knowledge of the train, or first opportunity to know of its presence, until he was struck on the crossing. When he stopped fifty feet from the crossing, and looked and listened for the approaching train, and heard and saw none, he had a right to assume that none was near, and it was not negligence on his part to proceed to drive upon the crossing without again stopping to look and listen. Nor would it be negligence on his part to fail to see the approaching train the very instant he reached the point where he might have observed it had he been looking in the direction from which it was approaching. The facts found by the answers to interrogatories are not sufficient to charge him with contributory negligence, and the court erred in sustaining appellee's motion for a judgment in its favor on the answers, and for this error the judgment must be reversed.

A question arises as to the proper mandate to be given the court below upon the reversal of the judgment in this court. It is insisted by appellant that this court 4. should direct the court below to render judgment on the general verdict in his favor, while the appellee contends that the mandate should require the granting of a new trial. The statute prescribes the duty of the Appellate Court upon reversal. When the judgment is reversed, in whole or in part, the Supreme Court (or Appellate Court) shall remand the cause to the court below, with instructions for a new trial, where the justice of the case requires it, but, if no new trial is required, with particular instructions relative to the judgment to be rendered and modifications thereof. §702 Burns 1908, §660 R. S. 1881. From the very nature of things, each appeal must be dis-

posed of on its own particular facts. If the justice of the case, as disclosed by the record, requires a new trial, a new trial will be granted; otherwise such judgment will be directed as the case requires. This is necessarily left to the sound discretion of this court. *Sinker, Davis & Co.* v. *Green* (1888), 113 Ind. 264; *Buchanan* v. *Milligan* (1886), 108 Ind. 433; *Murdock* v. *Cox* (1889), 118 Ind. 266; Elliott, App. Proc., §568.

The facts stated in the answers to interrogatories, while insufficient to justify a judgment in favor of the appellee, we think leave the question of contributory negligence in such uncertainty as to require this court, in the exercise of its discretion, to direct a new trial of the cause.

Judgment reversed, and new trial ordered.