ITTENBACH ET AL. v. THOMAS, ADMINISTRATRIX.

[No. 7,297. Filed October 6, 1911.]

1. TRIAL.— *Interrogatories.— Verdict.— Appeal.—* In determining whether the answers to the interrogatories to the jury overturn the general verdict the court on appeal will consider only such interrogatories and answers, the general verdict and the pleadings. p. 426.

2. TRIAL.—*General Verdict.—Presumptions.—*The general verdict is presumed to be a finding for the prevailing party on every fact in issue. p. 426.

3. TRIAL.—*General Verdict.—Interrogatories.—*The general verdict controls answers to the interrogatories unless such answers are irreconcilable therewith on any supposable evidence within the issues. pp. 427, 434.

4. TRIAL.—*Verdict.—Interrogatories.—Conflict on Certain Issues.—* Where the answers to the interrogatories to the jury are in irreconcilable conflict with the general verdict upon some of the issues, the general verdict must stand, if at all, upon the remaining issues. p. 427.

5. MASTER AND SERVANT.—*Defective Machinery.—Interrogatories.—* In an action by the administrator of a deceased servant against his master, the first paragraph of complaint alleging negligence in providing a crane with old and rotten rails to rest the cab upon, and in providing weakened and crystallized hog chains for lifting the loads, answers to interrogatories to the jury that the death was caused solely by the crystallization and breaking of the hog chain, and that the crystallization thereof was undiscoverable by the use of ordinary care, are irreconcilable with a general verdict for the plaintiff on such issues. pp. 427, 429.

6. MASTER AND SERVANT.—*Defective Machinery.—Inspection.—*It is a master's duty to make inspection of machinery, for ascertaining any defects therein produced from any cause, but a failure to discover defects that are not discoverable by the use of ordinary care does not constitute negligence. p. 429.

7. MASTER AND SERVANT.—*Defective Machinery.—Interrogatories.—* In an action by an administratrix for the death of her decedent caused by the alleged negligence of defendant in providing a crane with hog chains negligently adjusted so that one chain bore

the entire load and the consequent breaking thereof, answers to the interrogatories to the jury that the chain broke because of the improper adjustment, that there was nothing to indicate that the chain was insufficient to carry the load placed upon it and that decedent was in a better position than any one else to ascertain whether any particular chain should be tightened or slackened are not irreconcilable with a verdict for the plaintiff as to such issue, since evidence was admissible to show that the decedent was away when the adjustment was made and had just returned and knew nothing thereof. pp. 430, 434.

8. MASTER AND SERVANT.—*Instructions.—Essentials for Recovery.— Omission of Material Fact.*—In an action by the personal representative of a decedent against the defendant for negligence causing the death of said decedent, an instruction purporting to set out all the facts essential to plaintiff's right of recovery, but which omits the decedent's want of notice, actual or constructive, of the alleged defect in the machinery causing his death, is fatally erroneous, and cannot be cured by other instructions announcing the correct rule. p. 435.

From Superior Court of Marion County (74,345) ; *James M. Leathers,* Judge.

Action by Abbie J. Thomas, as administratrix of the estate of W. Scott Thomas, deceased, against Frank Ittenbach and another. From a judgment on a verdict for plaintiff for $1,000, defendant appeals. *Reversed.*

*Elam, Fesler & Elam,* for appellants.
*Kealing & Hugg* and *H. N. Spaan,* for appellee.

LAIRY, C. J.—This action was brought in the Superior Court of Marion County by Abbie Thomas, as administratrix of the estate of her deceased husband, W. Scott Thomas, to recover damages occasioned by his death, which was caused by the breaking of a traveling crane upon which he was at work while in the service of appellants. The negligence charged is that appellants did not exercise reasonable care to provide decedent with a safe place in which to work.

The first paragraph of complaint, omitting the formal parts, is as follows: That at, and for a long time prior to, the times hereinafter stated defendants were engaged in the business of cutting and dressing stone to be used for build-

ing purposes, and, as such, owned and operated a yard and mill in the city of Indianapolis, Marion county, Indiana, where they cut and dressed stone, and they also owned and operated, in connection with the cutting and dressing of stone, a traveling crane, used to hoist stone to and from cars, planers and saws in defendants' said yard; that said crane was operated along and upon a tramway of two tracks of rails laid and fastened upon timbers, which timbers were laid and fastened to and upon wooden trestles, which rested upon the ground, and upon which said rails the traveler of said crane moved back and forth; that said rails were about forty-five feet apart and about twenty-five feet higher than the ground upon which said trestles rested; that said tramway was about one hundred and thirty-five feet in length; that said traveler consisted of timbers fastened together, along and on top of which were laid and fastened two steel or iron rails about five feet apart, running the full length of said traveler, which extended from rail to rail of said tramway, and at the end of said traveler there were four wheels resting upon the rails of said tramway, two on each rail, and underneath the rails and timbers of said traveler, and connected therewith and supporting it, were four hog chains, which, when they were properly and safely arranged, were so adjusted that each should bear its proportionate share of the weight, strain and load which said crane might carry, hoist or move in and about defendants' said yard and mill while being operated; that said timbers of said traveler were bolted and fastened together at the ends and in the center; that upon said rails of the traveler there was a cab set upon trucks at each end thereof, and in connection with these trucks were wheels, two of which were on each side of said cab, and these wheels moved on and along the rails of said traveler; that from said cab, and between the timbers, rails and hog chains of said traveler, there was suspended a block and tackle connected with the machinery in said cab, and to which block and tackle there was attached a hook, which

was fastened to the stone or other object to be moved by said crane; that by means of said traveler, defendants moved large blocks of stone in and about their said yard and mill, in the course of their business as such contractors, and in cutting and dressing stone to be used for building purposes; that in said cab were located an engine, boiler and the machinery necessary for moving said traveler, and for moving said cab along the rails of said traveler, and for hoisting or moving said stone in and about defendants' said yard by means of said block and tackle as aforesaid; that said traveler moved along said tramway by means of the wheels at the end of said traveler, which rested upon the rails of said tramway; that said truss-rods supported the timbers, machinery, rails and cab of said traveler, and it was upon these hog chains that the load moved by said crane was carried; that said tramway ran east and west, and said crane was so constructed that said traveler could be moved east and west on and along the rails of said tramway, and said house or cab upon said traveler could be moved north and south between said tramway; that said traveler had been so constructed that it could hoist and move in safety, and had hoisted and moved in safety, prior to February 6, 1907, large blocks of stone, weighing twenty-two and twenty-three tons, and when in good repair should hoist in safety stones and other large bodies weighing twenty tons.

That W. Scott Thomas, plaintiff's decedent, was in the employ of defendants on February 6, 1907, and had been in their employ for a long time prior thereto, in the capacity of engineer of said traveling crane; that as such it was his duty to perform his work in said cab upon said traveler, and to run and operate said engine, boiler and machinery connected therewith, and, at the order and direction of defendants, their agents and employes, to move, by means of said crane, blocks of stone, and in order to do so, it was necessary for him to move and operate said cab north and south along the rails of said traveler, and move and operate

said traveler upon and along the rails of said tramway east and west, thereby moving and placing said stones at such places in and about said yard and mill as defendants, their agents and employes might desire; that defendants had used said traveling crane for a long time prior to said date, and the happening of the injuries hereinafter complained of; that defendants carelessly, wrongfully and negligently suffered and permitted the timbers, upon which the rails and the cab rested, to become old, rotten, weak and worn out, and carelessly, wrongfully and negligently suffered and permitted the hog chains supporting said timbers, rails and cab, by reason of the use to which they had been put, to become weakened, and the iron or steel to become crystallized, and rendered wholly insufficient in strength to support, carry and hoist the loads which defendants required plaintiff's decedent to lift, hoist and move with said crane, and rendered said traveler wholly insufficient for the purpose for which it was to be used, and rendered it dangerous and defective; that it was not the duty of decedent to inspect and repair said crane, or any of its several parts.

That on February 6, 1907, while decedent was engaged in the discharge of his duties, as such employe of the defendant, and while engaged in operating said crane, and while in the place where his said duties required him to be, to wit, in said cab, and while engaged in lifting a stone weighing only fourteen tons, under the order and direction of defendants, their agents and employes, in the line of their duty as such agents and employes, one of the hog chains and timbers of said traveler, supporting said cab, by reason of its weakened, defective, rotten and crystallized condition, broke, causing said cab to turn over and fall to the ground, fracturing decedent's skull and right leg, and otherwise wounding, crushing and mangling him, by reason of which he then and there died; that defendants, at and before the breaking of said timbers and of said hog chain, had knowledge that said timbers in said traveler were old, weakened, rotten, worn

out, and defective and dangerous as aforesaid, that said hog chain was weakened, and that the iron or steel in said chain had become crystallized, and that said chain was insufficient to support, carry and hoist the loads that defendants were hoisting, moving and placing with said traveler, as aforesaid, and which they required decedent to hoist and move with said crane; that said chain was wholly insufficient for the purposes for which it was used, and was defective and dangerous as aforesaid, and defendants had knowledge of said defective condition long enough prior to said injuries to repair said chain and put it in good condition, by the exercise of reasonable care; that decedent did not know that said timbers in said traveler were old, weakened, rotten, worn out and out of repair, and defective and dangerous as aforesaid, and did not know that said hog chain was weakened, or that the iron or steel in it was crystallized, and insufficient to support, carry and hoist the load which defendants required, ordered and directed him to hoist, move and place with said crane, or that said hog chain was wholly insufficient for the purposes for which it was used, or was defective and dangerous as aforesaid.

That said decedent at the time of his death was fifty-five years old, and his expectancy at said time was seventeen and fifty-eight one-hundredths years; that on August 31, 1907, plaintiff was appointed administratrix of the estate of said W. Scott Thomas, deceased, by the clerk of the Marion Circuit Court, who was and is *ex officio* the clerk of the Probate Court of Marion County, Indiana, and that she duly qualified and assumed the duties as such administratrix, and is now acting as such; that said W. Scott Thomas died, leaving surviving him as his sole heir at law, his widow, the plaintiff; that at the time of his death, decedent was earning $18 a week, and was in good health; that said injuries and consequent death of plaintiff's decedent were caused solely by the negligent, careless and wrongful acts of defendants as aforesaid, and that said negligent acts and conduct were the

sole and proximate cause of the injuries to, and the consequent death of, plaintiff's decedent, to plaintiff's damage in the sum of $10,000. The second paragraph was substantially like the first, except that the negligence charged in the first as to the rotten lumber was omitted from the second.

The third paragraph was like the first, except that the only negligence charged was the failure of appellants properly to adjust the hog chains so that each would bear its proportionate share of the weight, and that by reason of such faulty adjustment the weight of everything lifted by the crane rested largely upon one of the hog chains, when a proper adjustment would have distributed the weight to four.

The fourth paragraph was substantially like the third, except that the negligence charged against appellants was their failure properly to inspect the traveling crane, and their consequent failure to discover that the hog chains were improperly adjusted.

Appellants filed an answer in general denial to each paragraph of the complaint, and the issues thus formed were submitted to a jury for trial. The jury returned a general verdict in favor of appellee, and also returned with the general verdict answers to 102 interrogatories submitted by the court. Appellants moved for judgment in their favor on the answers to the interrogatories notwithstanding the general verdict, which motion was overruled and exception reserved, and this action of the court is assigned as error and relied on for reversal.

In passing on the question here presented, this court must look solely to the general verdict, the interrogatories and the answers thereto, and the issues as made by the pleadings. 1. The general verdict, when considered separately for the purpose of this motion, is presumed to 2. find every material fact within the issues in favor of the prevailing party. The general verdict, however, is not the entire verdict of the jury. The interrogatories

and the answers thereto constitute a part of the verdict, and must be considered in connection therewith. So far as the answers to the interrogatories are in irreconcilable

3. conflict with the general verdict, such answers control, and override the general verdict. If the facts found by way of answers to interrogatories cover every issue made by the pleadings, and if they are so clearly in conflict with the general verdict as to make it impossible to reconcile the two under any evidence admissible within the issues, then the general verdict must yield as an entirety. If the answers to the interrogatories are in irreconcilable conflict with the general verdict upon certain issues formed by the pleadings, this has the effect to narrow the ap-

4. plication of the general verdict to the other issues within the pleadings, upon which there is no such irreconcilable conflict between the general verdict and the answers to the interrogatories, and the general verdict must stand, if it stands at all, upon these issues. If the answers to the interrogatories are not in irreconcilable conflict with the general verdict, as applied to one or more of the issues, such general verdict will stand upon those issues, notwithstanding the irreconcilable conflict between such answers and the general verdict as to other issues; and, in the further consideration of the case, the general verdict will be treated as resting solely upon those issues to which it is so limited by the answers to the interrogatories.

We shall now consider the issues in reference to defendants' negligence as presented by the first paragraph of complaint in connection with the general verdict and

5. the answers to the interrogatories bearing upon such issues. The negligence charged against defendants is that they negligently suffered and permitted the lumber upon which the rails and cab rested to become old, rotten, weak and worn out, and carelessly suffered and permitted the hog chains supporting said lumber, rails and cab, by reason of the use to which they had been put, to become

weakened, and the iron or steel in said chains to become crystallized, and rendered wholly insufficient in strength to support, carry and hoist the loads that were required to be lifted, hoisted and moved by said crane, and rendered said crane wholly insufficient for the purposes for which it was used, as well as dangerous and defective.

The interrogatories and the answers thereto, bearing directly upon the facts material to this issue, are as follows: "Q. Was said traveler so constructed that it was supported by four hog chains? A. Yes. Q. Did each of these hog chains consist of three iron rods? A. Yes. Q. Were such iron rods coupled together by links, so that three of them made a continuous chain extending from one end of the bridge of the traveler to the other end thereof? A. Yes. Q. Was each of these hog chains made of wrought iron? A. Yes. Q. Were the threads cut on each end of each chain by which their diameter was reduced where such threads were cut to about one and five-eighths inches? A. Yes. Q. Was the estimated tensile breaking strength of each of said rods at least 60,000 pounds? A. Yes. Q. If of reasonably good iron, should these four rods have carried at least 240,000 pounds? A. Yes. Q. Did one of these rods break, and allow the engine upon the traveler to fall, with the decedent upon it, to a stone pile below the traveler, and so cause the death of decedent? A. Yes. Q. Was there any other cause for the falling of the engine and the death of the decedent, except the breaking of one of the hog chains? A. No. * * * Q. Was the rod that broke crystallized at the point of fracture at the time it broke? A. Yes. Q. Did such crystallization to some extent weaken it at that point? A. Yes. Q. What portion of its original strength, if any, was taken away by such crystallization? A. No evidence. Q. Could this crystallization be discovered in any way before the rod broke? A. No. Q. If it could be discovered, by what examination or inspection could it have been done before it broke? A. No evidence. Q. What was there that

could be seen on the outside of the rod before it broke, to show any crystallization? A. Nothing. Q. Is there any test or inspection of any kind that will determine that a rod is crystallized before it is broken, and the inside revealed by the fracture? A. No. Q. Was the breaking of the hog chain the sole cause of the engine's toppling over, and killing decedent? A. Yes."

It is true that ordinary care on the part of the master requires that he shall take notice of the tendency of parts of machinery to decay from age, or wear out by use, and the law requires him to make reasonable inspection of the various parts of machinery from time to time for the purpose of discovering any defective parts, to the end that such parts may be replaced or repaired, and his failure to make proper inspection or to repair or replace defective parts which are discovered or which might have been discovered by such inspection, is negligence; but the master is not liable for an injury to his servant caused by a hidden defect in the machinery or appliances furnished to the servant, when such defect was unknown to the master and of such a character that it could not be discovered by reasonable care and skill in inspection. *Chestnut* v. *Southern Ind. R. Co.* (1901), 157 Ind. 509; *Louisville, etc., R. Co.* v. *Bates* (1897), 146 Ind. 564; *Baxley* v. *Satilla Mfg. Co.* (1902), 114 Ga. 720, 40 S. E. 730; *Sack* v. *Ralston* (1908), 220 Pa. St. 216, 69 Atl. 671, 17 L. R. A. (N. S.) 104.

The answers to interrogatories explicitly show that the breaking of the hog chain was the sole cause of the injury, and that the defective condition of said chain, as charged in the complaint, was not known to appellants, and could not have been discovered by any test or inspection possible. It is therefore apparent that the answers to the interrogatories before quoted are in direct conflict with the general verdict when such general verdict is considered in connection with the issues formed under the first paragraph of the complaint. As the charge of negli-

gence contained in the second paragraph of complaint is practically the same as that contained in the first, what has been said applies with equal force to the second paragraph. The effect of the answers to interrogatories quoted is to limit the application of the general verdict to the issues formed under the third and fourth paragraphs of the complaint.

We shall now consider the answers to interrogatories and the general verdict in connection with the issues formed under the third and fourth paragraphs of complaint.

7.  The gravamen of the charge of negligence in the third paragraph is that the traveler was supported by four hog chains, two on each side; that these chains should have been so adjusted as to bear the weight equally, but that they were negligently and carelessly adjusted by defendants, by the tightening of one of them more than the others, that one was required to sustain a weight greatly in excess of its proportion, and more than its strength would stand, and that it broke by reason of this improper and negligent adjustment. The fourth paragraph of complaint charges the same defective adjustment of hog chains as the third, and charges that appellants were negligent in failing, by proper inspection, to discover the defect. The third paragraph alleges that the defective adjustment of the hog chains was known to appellants, and the fourth charges that it could have been known to them had they made proper and reasonable inspection. Both of these paragraphs allege that the defective adjustment of the hog chains was not known to decedent. The effect of the general verdict is to find that the hog chains were defectively adjusted, as alleged, and that one of them broke by reason of such defective adjustment, and caused the death of decedent; that appellants knew of such defective adjustment, or that they might have known of it by making a reasonable inspection, and that the defective adjustment was not known by decedent.

The answers to interrogatories, so far as they relate to

the negligence charged in the third and fourth paragraphs of complaint are as follows: ''(23) Q. Was the traveler in question built with the design that it would carry safely loads weighing twenty tons? A. Yes. (24) Q. Had it been used a number of years in defendant's stone yard to carry loads, most of which weighed fifteen tons or more? A. Yes. * * * (26) Q. Was there at any time before the accident in which decedent was killed any indication that the traveler was not strong enough to carry the loads that were put upon it? A. No. (27) Q. Was there at any time anything in the appearance or movement of the traveler that indicated that it would not carry loads of fifteen tons or more? A. No. * * * (34) Q. Did defendants believe, and have good reason to believe, that the hog chain that broke was sufficient to carry the loads to which it was subjected in their business, without danger, up to the time decedent was killed? A. Yes. * * * (59) Q. When the traveler lifted the stone in question, and while it was carrying it to the place where it was about to be deposited, what, if anything, was there to indicate that the rod that broke was not strong enough to carry the stone? A. Nothing. (60) Q. Did said rod, together with the other rods under the traveler that did not break, carry said stone safely until decedent begun to lower it? A. Yes. (61) Q. Until the rod broke, what, if anything, was there to indicate that any part of the traveler was not sufficiently strong to carry the stone that decedent was starting to lower when his engine and cab fell? A. Nothing. * * * (64) Q. As operator of the engine, was the engineer in better position than any one else to determine when any particular hog chain should be slackened or tightened? A. Yes. * * * (66) Q. Had the one that broke been adjusted according to his direction on the same day or a few days before he was killed? A. No. * * * (68) Q. Was it so adjusted by shortening it? A. Yes. (69) Q. Was such adjustment one of the causes of the chain's breaking at the time it did?

A. Yes. (70) Q. Would it have broken as it did if it had not been so adjusted? A. No. (71) Q. Did the adjustment of the hog chains and the distribution of the strain upon them have anything to do with the breaking of the one that parted. A. Yes. (72) Q. If so, was it because the one that broke was drawn up tighter and made shorter than it should have been? A. Yes.''

Appellants contend that the answers to interrogatories clearly show that they did not know that the hog chains were defectively adjusted, and that they could not have known this fact by reasonable inspection.

The first interrogatory relied on is the twenty-sixth, in which the jury find that there was never any indication at any time, before the accident in which decedent lost his life, that the traveler was not strong enough to carry the loads placed upon it. It is claimed by appellants that this amounts to a finding that the defective adjustment could not have been discovered by inspection, the argument being that an inspection could only disclose defects of which there was some outward indication, and if there was nothing to indicate the weakness of the machine, that an inspection could not have disclosed it. This interrogatory, when considered in connection with the ones directly preceding it, which relate to the length of time the machine had been used, and weights that had been lifted by it, must be construed to mean that nothing had developed in the use of the machine in the past that would indicate that it was not strong enough to carry the loads that were put upon it. It may be true that the machine may have been used for years in lifting weights similar to the one under which it broke, and that nothing occurred or developed in such use that would indicate a weakness or defect, and still a defect might exist that could readily be discovered by a careful inspection of its various parts.

The general verdict finds that the defective adjustment could have been discovered by reasonable inspection and the

interrogatory under consideration does not expressly and directly find that it could not. No interrogatory was propounded to the jury which required an answer as to whether the defective adjustment could have been discovered by an inspection. No inferences will be indulged in favor of an interrogatory as against the general verdict; all presumptions are to the contrary.

What has been said in reference to interrogatory twenty-six, applies with equal force to interrogatory twenty-seven. By the thirty-fourth interrogatory the jury find that appellants believed and had good reason to believe that the hog chain that broke was sufficient to carry the loads to which it was subjected in their business, without danger, up to the time plaintiff's decedent was killed. The fact that appellants believed the machine to be safe, and had good reason so to believe, would not excuse them from liability, if it was in fact defective, and if such defect could have been discovered by a reasonable inspection.

Interrogatories fifty-nine and sixty-one find that when the traveler lifted the stone under the weight of which it broke, and while it was carrying it to the place where it was about to be deposited, there was nothing to indicate that the rod that broke was not strong enough to carry the stone; and that, until the rod broke, there was nothing to indicate that any part of the traveler was not sufficiently strong to carry the stone. What we have said in discussing interrogatory twenty-six applies with equal force to these. We may also add in reference to these interrogatories, that they find only that there was nothing to indicate that the parts of the traveler were not sufficiently strong; they do not find that there was nothing to indicate that the parts were not properly adjusted.

It is also claimed by appellants that interrogatory sixty-four shows that decedent had a better opportunity to know of the danger than appellants had, and that decedent, there-

fore, assumed the risk. Interrogatory sixty-four finds that the engineer, as operator of the engine, was in a better position than any one else to determine when any particular hog chain should be slackened or tightened. This does not necessarily mean that decedent had an equal opportunity with appellants to know that the chains were not properly adjusted. One definition given by Webster for the word "position" is: "The spot where a person or thing is or is placed or takes a place; site; place; station; situation." Giving the word this meaning, the finding of the jury in answer to this interrogatory means that the position of the engineer in the cab was more favorable that that of any one else from which to determine when any particular hog chain should be tightened or slackened. It is a well settled rule of law that an answer to an interrogatory will not be held to be in conflict with the general verdict if the apparent conflict could be reconciled by any evidence admissible within the issues. Evidence was admissible within the issues to show that the hog chains had been adjusted shortly before the accident, that decedent had not been in his station in the cab after such readjustment until immediately before the accident, and that he had no opportunity to discover the defective and improper adjustment of the hog chains. This interrogatory does not, therefore, find that decedent had an equal opportunity with appellants to discover the danger to which he was exposed. The interrogatories are not in irreconcilable conflict with the general verdict, when considered in connection with the issues formed under the third and fourth paragraphs of complaint, and appellants' motion for judgment in their favor on answers to interrogatories was properly overruled.

Appellants filed a motion for a new trial, which was overruled and exceptions reserved. The causes assigned for a new trial, and relied on for reversal, are (1) the giving of instruction twenty-five; (2) the giving of instruction thirty-

one; and (3) that the verdict of the jury is not sustained by sufficient evidence.

The twenty-fifth instruction is as follows: "If you find from a fair preponderance of the evidence that defendants, shortly before the death of decedent, as alleged, had

8. repaired the bridge of defendants' traveler, upon which decedent was, at the time, employed, then it was the duty of defendants to exercise reasonable and ordinary care and diligence in making such repairs, and, in so doing, to adjust the truss-rods, or hog chains, supporting said bridge in such manner that they should be reasonably fit and safe to do the work which defendants required to be done with said traveler. And if you find from a fair preponderance of the evidence that at the time and place in question defendants employed decedent to operate said traveler, and he was, in fact, so engaged in the operation thereof, in the line of his employment and the discharge of the duties required of him in his work, and if you further find that shortly before the accident that caused the death of decedent, defendants negligently and carelessly repaired and overhauled said bridge and said truss-rods, or hog chains, and that as a result of such negligent repairs—if you find they were negligently made—said truss-rods, or hog chains, were so loosened and so adjusted that the strain of the loads attempted to be moved by said traveler was unequally distributed, and as a result thereof a greater weight and strain was put upon one or more of said truss-rods, or hog chains, than upon the others, and if you further find that because of such negligence and carelessness in the repair and adjustment of said truss-rods said traveler could not, and did not hoist and move in safety loads of less weight than had been hoisted and moved by it before the defendants repaired said rods, and if you further find that, as the direct and proximate result of such negligence of defendants, one

of said truss-rods broke, and caused the cab on said bridge to fall and kill decedent—then I instruct you that plaintiff in this case would be entitled to recover, provided you further find that plaintiff's decedent was himself free from any negligence proximately causing or contributing to the alleged injuries resulting in his death.''

In this instruction the court undertook to inform the jury what facts appellee was required to establish in order to entitle her to a verdict.   Such an instruction amounts to a direction to the jury to return a verdict in favor of plaintiff, if the facts enumerated therein are established by the evidence, and that the facts·so enumerated are sufficient, if established, to warrant such a verdict, unaided by any other facts.   If such an instruction omits from the facts enumerated one or more facts, proof of which is essential and necessary to a recovery by plaintiff, it is erroneous.   An instruction that is erroneous for this reason cannot be cured by the giving of other instructions that correctly state the law.  *American, etc., Tin Plate Co.* v. *Bucy* (1909), 43 Ind. App. 501; *Lake Shore, etc., R. Co.* v. *Johnson* (1909), 172 Ind. 548; *Pennsylvania Co.* v. *Ebaugh* (1899), 152 Ind. 531. Before plaintiff was entitled to a verdict, it was necessary for her to prove that her decedent had no knowledge of the defective condition of the machine which caused his death, and also that he could not have known of such defects by the exercise of ordinary care.   It will be observed that this instruction makes no reference to decedent's knowledge or want of knowledge of the defects mentioned in said instruction.  If the jury obeyed this instruction, it could return a verdict in favor of the plaintiff, even though it failed to find from a preponderance of the evidence that decedent had no knowledge of the defects complained of, or even though it was satisfied from the evidence that he did possess such knowledge.   The giving of this instruction

was prejudicial error, which entitles appellant to a new trial.

As a new trial must be granted for the error already pointed out, it is unnecessary to prolong this opinion in the consideration of other errors assigned, as the same questions may not arise upon a second trial.

Judgment reversed, with directions to grant a new trial.