MORRISSEY v. THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 8,614. Filed November 4, 1915. Rehearing denied January 6, 1916. Transfer denied February 17, 1916.]

1. RAILROADS.—Street Crossings.—Personal Injuries.—Complaint.— A complaint against a railroad company for personal injuries, alleging that defendant was negligent in maintaining its track at an elevation above a street crossing, so that there had to be an incline in the board walk crossing the track and down to the sidewalk level, and in permitting an accumulation of ice from water and steam which escaped while engines received water from an adjacent standpipe, that such dangerous situation had existed through the winters for ten years and that defendant was advised of it and could have remedied it, but failed to do so, that plaintiff had occasion to cross the track frequently at such point, which was one of the principal streets of the city, that the plaintiff slipped on such ice and suffered severe and permanent injuries through no negligence of his own, and entirely through the negligence of defendant in so maintaining the crossing and so causing the ice to accumulate, did not show that plaintiff was guilty of negligence in attempting to cross, and was sufficient. p. 92.

2. RAILROADS.—Street Crossings.—Duty to Make Safe.—Conformity to Street Grade.—Under §5250 Burns 1914, Acts 1895 p. 233, it is the duty of railroad companies to keep their crossings in a safe condition for use by the traveling public, and they may be compelled by mandate to make their tracks conform to street grades and to construct crossings over their tracks. p. 98

3. RAILROADS.—*Street Crossings.—Personal Injuries.—Contributory Negligence.—Answers to Interrogatories.*—In an action against a railroad company for personal injuries to plaintiff who slipped and fell while attempting to pass over a board walk maintained by defendant over its track at a public street crossing, where the complaint charged negligence in maintaining the approach from the sidewalk to the crossing at a sharp incline and in permitting an accumulation of ice at such place, etc., a general verdict for plaintiff amounted to a finding that plaintiff was not guilty of contributory negligence in attempting to pass over such crossing, and answers by the jury to interrogatories, though showing that plaintiff had knowledge of the dangerous condition, were insufficient to sustain a judgment thereon notwithstanding the verdict, in the absence of a finding that plaintiff's attention was not diverted at the time.  pp. 98, 99.

4. APPEAL.—*Answers to Interrogatories.—Scope of Review.*—In reviewing the ruling on a motion for judgment on the jury's answers to interrogatories the court on appeal will consider only the general verdict, the interrogatories and answers thereto, and the pleadings. p. 99.

5. TRIAL.—*Verdict.—Answers to Interrogatories.*—It is the duty of the trial court to sustain a motion for judgment on the jury's answers to interrogatories where they are in irreconcilable conflict with the general verdict.  p. 99.

6. MUNICIPAL CORPORATIONS.—*Defective Streets.—Injury to Pedestrian.—Contributory Negligence.*—Though a pedestrian has knowledge of the dangerous or defective condition of a street, it is not negligence as a matter of law for him to use such street, unless the danger is so great as to preclude use by a person in the exercise of ordinary care.  p. 99.

7. APPEAL.—*Review.—Disposition of Cause.—New Trial.*—Although there is no motion for a new trial in the record, the court on appeal will order a new trial if it appears that the ends of justice will thereby be best subserved.  p. 101.

From Superior Court of Tippecanoe County; *Henry H. Vinton,* Judge.

Action by James Morrisey against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Daniel P. Flanagan* and *Thompson & McAdams,* for appellant.

*Dan W. Simms, Stuart, Hammond & Stuart, L. J. Hackney* and *Frank L. Littleton,* for appellee.

SHEA, C. J.—This action was brought by appellant to recover damages for an injury alleged to have been received in a fall on an ice covered sidewalk while passing over appellee's right of way. The jury returned a general verdict in favor of appellant for $2,750, but the court below sustained appellee's motion for judgment on the facts found in answer to certain interrogatories submitted to the jury and rendered judgment in its favor.

The errors assigned and relied on by appellant for a reversal are the sustaining of this motion and the overruling of his motion for judgment in his favor upon the general verdict. Appellee assigns as cross error in this court the overruling of its demurrer to appellant's complaint. The substantial allegations of the complaint are as follows:

That appellee for the past ten years has operated a steam railroad through the city of Lafayette in Tippecanoe County, Indiana, and maintained in said city on December 14, 1910, in addition to its main track a switchyard, composed of sidetracks, turntable and a roundhouse; that a public highway known as Second Street and Wabash Avenue, following a general course of north and south, is located within the corporate limits of said city, which appellee's main track and sidetracks, running southeast and northwest, cross at right angles, the section south of appellee's right of way being known as Wabash Avenue, and that north thereof as Second Street; that cement sidewalks are maintained on either side of the highway for the use of pedestrians, and the walk on the west side extends from the intersection of South and Second Streets to the north line of appellee's right of way, then commencing at the south line of said right of way, it extends to the corporate limits of the city, From the cement on the north to the cement on the

south side of its right of way appellee constructed a board walk over its tracks and roadbed, thereby making a continuation of said walk; that appellee's south track was a sidetrack running northwest from the west line of said highway a distance of three hundred feet to appellee's roundhouse, and between the roundhouse and public highway appellee maintained a turntable which could be so arranged as to be a part of the south sidetrack, running into the roundhouse; that appellee's track and roadbed especially the south sidetrack at the point where same passed over the board walk was from eighteen to twenty inches above the level of the highway and cement walk, and in placing the board walk appellee continued same south of the south rail of its south sidetrack a distance of two feet, at which point it joined the cement; that on account of the location of the south track above the grade of the highway and cement walk appellee was compelled to and did place the boards on a sharp decline of eighteen inches from the south rail to the cement; that for some time previous to December 14, 1910, appellee maintained a standpipe which was in constant use day and night, for supplying its engines with water at such location upon its right of way north and west of the board walk, that an engine in running to the pipe on the south track could receive water therefrom, and while being so supplied with water, the tender of the engine stood over the planked walk where it sloped down and out towards the cement walk; that appellee frequently filled its tenders to overflowing which, in moving the engines away, would cause large quantities of water to be cast daily upon that part of the board walk constructed upon the sharp decline; that the engines standing upon the crossing while being supplied with water deposited large quantities of steam and water upon

said board walk, upon the sharp decline, and upon the cement walk immediately south of the board walk, so as to cause a pool of water to stand upon the cement walk which during cold weather would freeze, thereby creating and causing to remain upon the boards located on the sharp decline and on the cement walk a continuous sheet of ice, of all of which facts appellee had full knowledge for a sufficient length of time to have avoided the escaping of water from the tender and engines at said point, and in the exercise of ordinary care for the safety of the traveling public to have lowered its track and so arranged its roadbed as to conform with the grade of the street, and to place the board walk upon a level with the same, thus removing all elements of danger to pedestrians; that appellee could have placed its waterstand in such position from the highway as to have avoided the presence of steam and water being cast upon the board walk on the sharp decline, and it had full knowledge of the danger to the traveling public in permitting these conditions to exist; that appellant was engaged in work at a point north of the crossing and lived south of same, and his customary course of travel from his work to his home was along over the west sidewalk and board walk; that he started from his working place near six o'clock p. m. on December 14, 1910, on the west sidewalk, passed on the board walk and over same to a point immediately south of the south rail of appellee's south track, and started down the board walk on the sharp decline south of the track; that it was dark at the time, and while he proceeded carefully down the incline his feet slipped from under him on the ice on said decline and he was violently thrown upon said board walk and sidewalk, causing serious and permanent injury to his knee. It is charged that appellee was careless and negligent towards appel-

lant in maintaining its roadbed at the point at the height of from eighteen to twenty inches above the grade of the street, and in neglecting to maintain its roadbed and track at the crossing on a level with the grade of the public highway in such manner as to maintain a level footway over the track to the south boundary line of its right of way; in maintaining its board walk on the sharp decline, well knowing that by casting the water from its engines and tenders upon said boards there was present in the winter time and at all times during cold weather a sheet of ice upon said boards and on the sharp decline, and that the location of said boards on the decline and the presence of ice thereon made the crossing at that point extremely dangerous and unsafe for the use of the traveling public as a footway over its right of way; in suffering and permitting water to gather upon said boards on the sharp decline and to permit the same to freeze thereon at the time of the accident to appellee; in maintaining its board walk on the decline aforesaid, well knowing that the same was in constant use by the traveling public, and that by the presence of ice thereon, of which it had full knowledge, the walk was made dangerous for the use of pedestrians passing thereover; in maintaining its standpipe in such close proximity to the sidewalk with knowledge of its construction, as to cause water to escape from the engines upon the board walk, and of the escape of water from its tenders at said point; that it was careless and negligent in causing its tenders to overflow when being filled at said standpipe, thereby casting great quantities of water upon the board walk and the decline to appellant's injury; that the public highway at the point where it crossed appellee's road, is one of the principal highways in the city of Lafayette, and hundreds of people pass over the sidewalk daily, all of

which was well known to appellee; that the fall and injury to appellant's knee was without his fault, but was caused by and resulted from the careless and negligent acts of appellee.

In support of its assignment of cross error appellee contends that from the allegations of the complaint it is apparent that the place where appellant fell on the sidewalk was so plainly and palpably dangerous that a man of ordinary prudence, acting carefully and knowing its condition as did appellant, would not undertake to pass over it in the manner attempted by him, and where a defect in a sidewalk or street is so dangerous that a man of ordinary prudence would not attempt to pass over it, then, in the absence of some overwhelming necessity for him to do so, it is negligence to make the attempt. We do not believe the complaint is susceptible of the construction placed upon it by appellee's learned counsel. It charges specifically the various acts of negligence above set out and also contains the general charge that the injury was caused by said negligent acts, which makes the complaint amply sufficient when measured by the rule laid down in the case of *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99. See, also, *Nickey* v. *Steuder* (1905), 164 Ind. 189, 73 N. E. 117; *Pittsburgh, etc., R. Co.* v. *Wilson* (1904), 161 Ind. 701, 66 N. E. 899; *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143, 73 N. E. 91; *City of East Chicago* v. *Gilbert* (1915), 59 Ind. App. 613, 108 N. E. 29, 109 N. E. 404; *City of Terre Haute* v. *Lauda* (1915), 58 Ind. App. 480, 108 N. E. 392.

Having reached this conclusion with respect to the sufficiency of the complaint we need not consider the other question presented as to the effect of cross errors where the complaint is insufficient.

In answer to interrogatories the jury found the

facts as to the place where appellant's injury was sustained, and the surrounding circumstances to be substantially as set out in the complaint. In addition it is shown by said answers that the water cast upon the boards forming the decline remained and continued through the winter in cold weather for many years past, continuously to the time of appellant's injury, freezing on said boards, and that the general public used the west sidewalk extending over appellee's right of way during the winter, and when ice was freezing, irrespective of the fact that there was such ice upon the decline; that the ice was an inch thick; that the ground at the foot of the standpipe was from ten to twelve inches lower than the rails of its west track; that for six or seven years previous to December 14, 1910, appellant passed over said crossing on an average of two times a day, and on the day in question had passed over it three times before meeting with the accident complained of; that at all times he passed over the plank or board walk and for a period of two weeks previous to the accident the descent or decline was covered with ice, which was plain and visible to one going or about to go over same in the daytime; that appellant was familiar with the location and condition of the plank and board walk and the accident occurred about 6:20 p. m.; that it was dark at the time, appellant carried no light, and there were no lights present to guide and direct him over the ice on said walk at the time of his injury; that at the time of the accident, and while crossing over the board or plank walk, there was no defect or danger on the walk or the inclined portion thereof which was not known to appellant, and there were no dangers at the place except the descent or decline in the plank walk and the ice thereon; that the traveling public had used

the board walk forming the decline as a part of the west sidewalk of the public highway for ten years, and there was no other public highway extending north and southwest of the crossing in question by which the traveling public living south and west thereof could come to the main portion of the city of Lafayette.

Appellee insists that it was not negligence to fail to have the grade of its tracks conform to the grade of the street. Section 5250 Burns 1914, Acts 1895 p. 233 in force since March 11, 1895, reads as follows: "That it shall be the duty of each railroad company whose road or tracks cross, or shall hereafter cross, any street, avenue or alley in any incorporated town or city in the state of Indiana; which said street, avenue or alley has been, or shall hereafter be, by addition, plat or otherwise dedicated to the public use, to properly grade and plank or gravel its said road and tracks at its intersection with and crossing of said street, avenue or alley in accordance with the grade of said street or avenue, in such manner as to afford security for life and property at said intersection and crossing." Railroad companies are, therefore, required to keep their crossings in a safe condition for use by the traveling public. *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237, 64 N. E. 860; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189, 63 N. E. 224; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 76 N. E. 980, 117 Am. St. 370; Elliott, Roads and Sts. (2d ed.) §778. They may be compelled by mandate to make their tracks conform to street grades and to construct crossings over their tracks. *Chicago, etc., R. Co.* v. *State, ex rel., supra,* 237; *Vandalia R. Co.* v. *State, ex rel., supra.*

3. It is specifically charged in the complaint that it was negligence to maintain the approach

to the crossing on an incline of eighteen to twenty inches, upon which ice was permitted to accumulate

It is very earnestly argued that the answers to the interrogatories show that appellant was guilty of contributory negligence in using said street when he had knowledge of its dangerous condition, having passed over it at other times during the same day and for some days prior thereto, during which time the ice was upon said street. It is well settled that in considering this question it is the duty of this court to take into account only the general verdict, the interrogatories and answers thereto, together with the pleadings. *American Car, etc., Co.* v. *Adams* (1912), 178 Ind. 607, 614, 99 N. E. 993; *Meyers* v. *Winona, etc., R. Co.* (1915), 58 Ind. App. 516, 106 N. E. 377; *Ittenbach* v. *Thomas* (1911), 48 Ind. App. 420, 426, 96 N. E. 21.

If when so considered there is an irreconcilable conflict between the facts found in answer to interrogatories and general verdict, it was the duty of the trial court to enter judgment on the answers, and it is the duty of this court to sustain it. The general verdict finds that appellant in this case was not guilty of contributory negligence. The rule is well settled that where a pedestrian has knowledge of the dangerous or defective condition of the street, it is not negligence as a matter of law to use said street, where it is not so dangerous as to preclude its use on that account by a person in the use of ordinary care. Our latest and best reasoned cases support this doctrine. *Cochran* v. *Town of Shirley* (1909), 43 Ind. App. 453, 87 N. E. 993; *City of Indianapolis* v. *Mullaly* (1906), 38 Ind. App. 125, 77 N. E. 1132; *City of Valparaiso* v. *Schwerdt* (1907), 40 Ind. App. 608, 82 N. E. 923; *City of Bluffton* v. *McAfee* (1899), 23 Ind. App. 112,

53 N. E. 1058; *Citizens St. R. Co.* v. *Sutton* (1897), 148 Ind. 169, 46 N. E. 462, 47 N. E. 462; *Nave* v. *Flack* (1883), 90 Ind. 205, 46 Am. Rep. 205; *Town of Newcastle* v. *Mullen* (1909), 43 Ind. App. 280, 87 N. E. 146; *City of East Chicago* v. *Gilbert, supra; City of Terre Haute* v. *Lauda, supra; Williams* v. *City of New York* (1915), 214 N. Y. 259, 108 N. E. 448; *Bailey* v. *City of Cambridge* (1899), 174 Mass. 188; *Navarre* v. *City of Benton Harbor* (1901), 126 Mich. 618, 86 N. W. 138; *Morris* v. *Village of Saratoga Springs* (1900), 55 App. Div. 263, 66 N. Y. Supp. 821; *Nebraska City* v. *Rathbone* (1886), 20 Neb. 288, 29 N. W. 920.

In the case of *City of East Chicago* v. *Gilbert, supra,* the court uses this language: "The responsibility of keeping in mind a known defect or obstruction in a street or sidewalk does not rest on the traveler with the same degree of intensity as on the municipality. * * * It would, therefore, seem to follow that a defect in a street or sidewalk might be of such a nature that a traveler, with prior knowledge of its existence, might momentarily forget there was such a defect without being chargeable with a want of due care, while the municipality, by reason of such duty resting on it, and a negligent failure to perform the same, might be held liable for an injury resulting therefrom." There is no finding that the attention of appellant was not momentarily diverted.

The case of *Williams* v. *City of New York, supra,* lays down the proposition that it is a question for the jury as to whether the injured party is guilty of contributory negligence where it appeared that he slipped on an icy sidewalk. This is amply sustained by our own authorities. *City of East Chicago* v. *Gilbert, supra; City of Terre Haute* v. *Lauda, supra.* In this case in addition to the negligence charged in

permitting the ice to accumulate and remain on the street, it is also found that there was an incline in the sidewalk of from six to eight inches. Adhering to this view of the law, we conclude that the trial court erred in rendering judgment on the answers to the interrogatories. While there is no motion for a new trial in the record, this court believes that the

7. ends of justice will be best subserved by ordering a new trial. *Meyers* v. *Winona, etc., R. Co., supra; Childress* v. *Lake Erie, etc., R. Co.* (1914), 182 Ind. 251, 259, 105 N. E. 467; *Inland Steel Co.* v. *Kiessling* (1910), 174 Ind. 630, 634, 91 N. E. 1084. Judgment reversed.

NOTE.—Reported in 110 N. E. 105. As to the duty of a railroad company to persons on or near to its track, see 20 Am. St. 452. As to duty of railroad to conform its crossing to a change of grade of street, see L. R. A. 1915 B 766. See, also, under (1) 33 Cyc 1056, 1060; (2) 33 Cyc 273, 281; (3) 33 Cyc 1142; (4) 38 Cyc 1930; (5) 38 Cyc 1927; (6) 28 Cyc 1422; (7) 3 Cyc 454.