## BARR ET AL. *v.* SUMNER ET AL.

[No. 22,416. Filed February 11, 1915. Rehearing denied June 18, 1915.]

1. TRIAL.—*General Verdict.—Scope.*—A general verdict for plaintiff is a finding for plaintiff on each issue involved. p. 408.

2. WILLS.—*Contest.—Undue Execution.—Pleading.*—A general allegation of the undue execution of a will is sufficient to tender any issue of duress, undue execution or fraud that might be shown by the evidence. p. 408.

3. WILLS.—*Contest.—Issues.—Undue Influence.—Answers to Interrogatories.*—In a suit to contest a will, where undue execution was charged in general terms and there was a verdict for plaintiffs, the court properly overruled defendants' motion for judgment on the jury's answers to interrogatories which showed testatrix to have been of proper testamentary capacity, even though certain findings on the question of undue influence and delusions were such as to require their rejection, since it must be presumed in the absence of a showing to the contrary, that the general verdict was based on some issue of duress, fraud or undue influence. p. 408.

4. APPEAL.—*Review.—Answers to Interrogatories.*—In reviewing a trial court's ruling on a defendant's motion for judgment on the jury's answers to interrogatories, resort to the evidence is precluded. p. 408.

5. STATUTES.—*Reënactment.—Adoption of Construction of Prior Statute.—Statute Authorizing Interrogatories to Juries.*—By reenacting the statute relating to the submission of interrogatories to a jury (§572 Burns 1914, Acts 1897 p. 128), the legislature adopted the construction which the courts had previously placed thereon. p. 409.

6. WILLS.—*Testamentary Capacity.—Religious Belief.—Spiritualism.*—The statutory right to make a will is not limited to those

who discard a belief in any particular cult, dogma or principle; hence a belief in spiritualism of itself does not impair the right of testamentary disposition.   p. 409.

7.  WILLS.—*Testamentary Capacity.—Religious Belief.—Evidence. —Instructions.*—A belief in any religious doctrine, philosophical system or science may be vitally material, in connection with other facts and circumstances, in determining the question of one's testamentary capacity; hence, where there was evidence that by a prior will testatrix made a bequest to a certain spiritualist, and the. will in suit omitted any gift to such person, that and other circumstances shown made the belief of testatrix in spiritualism a proper matter for consideration, and the court correctly refused an instruction that the subject of spiritualism had. no bearing upon the question before the jury.   p. 409.

8.  EVIDENCE. — *Unsoundness of Mind. — Opinion Evidence. — Nonexperts.*—In a suit to contest a will the opinions of nonexperts on the question of the soundness of mind of testatrix, based upon their statements, that they had observed her and observed her actions and appearance, etc., were proper to go to the jury as against the objection that no facts were detailed showing mental unsoundness, since the admissibility of such opinions is not determined from the detailed statements of facts on which they are based, but rests upon a rule of necessity arising from the fact that there may be many things in the appearance and acts of a person whose mentality is under investigation that can not be fully and accurately described in words, but which nevertheless form a reliable basis for a conclusion.   p. 410.

9.  APPEAL.—*Review.—Evidence.—Verdict.*—In a will contest, the court in considering the sufficiency of the evidence, without regard to the jury's answers to interrogatories, to sustain a verdict for plaintiffs on the ground of testamentary incapacity, can not say that the verdict is unsupported even though the opinions of nonexperts on the question were not entitled to consideration, where there was other evidence that testatrix was of unsound mind.   p. 411.

10.  APPEAL.—*Review.—Issues.—Evidence.—Answers to Interrogatories.—Statutory .Provisions.*—Sections 572, 573 Burns 1914, Acts 1897 p. 128, relating to special findings require a special finding on particular questions of fact on any or all issues in the case, thus repelling any inference of a legislative intent to limit the use of special findings by a jury as a mere basis for judgment *non obstante*; and, in view of the history and reasons for the enactment, a consideration of the findings of a jury in answer to interrogatories is essential in determining the sufficiency of the evidence to sustain a general verdict in an action involving several issues, as in a will contest based upon unsoundness of

mind, undue influence, etc., and such findings must be accepted as binding on any issue where they are supported by any evidence.  pp. 411, 423.

11. APPEAL.—*Review.*—*Findings.*—*Testamentary Capacity.*—A finding that testatrix at the time of the execution of her will was capable of understanding and acting with ordinary discretion in the ordinary affairs of life, is a finding of fact and not the statement of a conclusion.  p. 414.

12. WILLS.—*Testamentary Capacity.*—*Requisites as to Memory.*— A testator at the time of preparing and executing his will must have sufficient mind and memory to know the extent and value of his estate, the number and names of those who are the natural objects of his bounty, their deserts with reference to their treatment of him, and sufficient memory to keep these things in mind long enough to have his will' prepared and executed; but it is not necessary that a testator actually remembers such facts, the test being whether he had sufficient memory to remember them. p. 415.

13. WILLS. — *Testamentary Capacity.* — *Sufficiency of Memory.* — *Findings.*—Special findings that the directions of testatrix were followed in the preparation of her will, that it was read to her and understood by her before she signed it, that when she gave the directions, and when the will was read and signed, she had sufficient mind to understand the business in which she was engaged, and had capacity to understand and act with ordinary discretion in the ordinary affairs of life, necessarily include all things required to constitute sufficiency of memory, and show that she was possessed of testamentary capacity when the will was executed.  p. 415.

14. WILLS.—*Testamentary Capacity.*—*Insane Delusions.*—Though one may have sufficient mind and memory to make a will, his testamentary capacity may be destroyed by an insane delusion directly affecting the will.  p. 416.

15. TRIAL.— *Special Findings.*— *Contradictory Findings.*— Contradictory findings nullify each other if each is supported by some evidence.  p. 416.

16. WILLS.—*Insane Delusions.*—*Findings.*—*Evidence.*—A finding that at the time of executing her will testatrix was under the belief that she had been ordered from the house of a certain person and because of such belief held a feeling of resentment against such person and her children which affected the will, and that such belief was deeply rooted and could not be overcome by argument or persuasion, if accepted as a finding that testatrix was laboring under an insane delusion affecting her will, can not stand in the absence of any evidence whatever to show that any effort was ever made to convince her of the falsity

of her belief, since a mere mistake of fact does not constitute an insane delusion. pp. 416, 418.

17. WILLS. — *Testamentary Capacity.* — *"Insane Delusions".* — A mere mistake of fact does not amount to, nor even tend to show, an insane delusion, but to constitute such delusion there must be a spontaneous conception and acceptance of that as a fact which has no existence except in the imagination, and a belief therein which is irremovable by reasoning or argument. p. 417.

18. WILLS.—*Validity.—Undue Influence.*—Generally a will dictated by supposed spirits can not stand, though a will, if reasonable, is not necessarily void because the testator believed that he made it pursuant to the advice of spirits. p. 419.

19. WILLS.—*Validity.—Undue Influence.*—While undue influence is generally exerted by the beneficiary, a will may be invalidated by undue influence of which the beneficiary was ignorant. p. 419.

20. WILLS.—*Validity.—Undue Influence.*—An influence which does not induce the testator to make some gift in his will can not be deemed an undue influence. p. 419.

21. EVIDENCE.—*Effect of Cross-Examination.*—Where a witness in a will contest testified on direct examination that at a certain time the testatrix received a spirit communication requesting her "to do more" for a certain person, and on cross-examination said that the communication might have been "you should remember Kate" or "do different with Kate", the jury was warranted in finding that the supposed communication requested testatrix to "do more", since it is within the province of the jury to reconcile apparent conflicts between the testimony of a witness on direct and cross-examination. p. 419.

22. WILLS.—*Undue Influence.—Evidence.—Spirit Communications.*—Courts can not inquire into the intents or purposes of disembodied spirits, but in a will contest where testatrix was supposed to have been influenced by an alleged communication from the spirit world, the construction placed by testatrix upon the alleged message was a legitimate subject of investigation. p. 420.

23. WILLS.—*Undue Influence.—Evidence.*—Under evidence showing that shortly before making the will in suit testatrix received a communication from the spirit of her deceased father requesting her to "do more" for a certain person, and that at another time she received a communication from the spirit of her deceased husband with reference to the will she intended to make, the jury was warranted in inferring that the supposed message from her deceased father requested her in making or changing her will to do more for such a person than she had done. p. 420.

24. WILLS. — *Undue Influence. — Evidence.* — Where after making some minor personal bequests, testatrix willed all her property, including 6,300 acres of land to her father for life, and after his

death to a lady who had been raised by the parents of testatrix, for life, and shortly afterwards executed a deed conveying 628 acres of the land to such lady for life, and then after the death of her father executed a second will by which such lady was given a devise for life in one-third only of the residue of the net income of the estate, the jury was not warranted in finding that the execution of the last will was influenced by an alleged spirit message from the deceased father of testatrix advising her "to do more" for such lady. p. 421.

25. WILLS.—*Undue Influence.—Evidence.—Findings.*—A finding, warranted by the evidence, that the testatrix was not unduly influenced by her lawyer in the execution of her will is conclusive, even if the evidence was also subject to the inference that the execution of the will was procured by the undue influence of such lawyer. p. 422.

26. WILLS.—*Undue Influence.*—Undue influence, to invalidate a will, must be directly connected with and operating at the time of its execution, and must be of such compelling force that the apparent testator is but the instrument by which the mastering desire of another is expressed, so that the supposed will, or the particular part in question, is not the will of the testator except in the sense that he has consented to put his name to it in the form in which it appears. p. 423.

From Benton Circuit Court; *James T. Saunderson*, Special Judge.

Action by Edward C. Sumner and others against James R. Barr and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*Fraser & Isham, Stuart, Hammand & Simms* and *Ryan, Ruckelshaus & Ryan*, for appellants.

*Kumler & Gaylord* and *Monks, Robbins & Goodrich*, for appellees.

MORRIS, J.—Action by appellees, against appellants, to contest the will, and codicil thereto, of Mrs. Jennie E. Caldwell, and to revoke the probate thereof. Trial by jury, verdict and judgment for appellees. Error is assigned on the overruling of appellants' motion for judgment on the answers to interrogatories submitted, and on their motion for a new trial.

Testatrix, by her will and codicil, purported to devise real

estate of the value of about $900,000, and to bequeath personalty worth about $80,000. She left surviving no husband, ancestor, or descendant. Appellees Edward C., Aaron T., and Reynolds Sumner are children of a deceased brother of testatrix's mother; appellees Abigail H. Hart, Minerva H. Ditton, Elizabeth H. Bond, and Martha J. Jewell are children of Jane Hawkins, deceased, who was a sister of testatrix's mother; appellee James Hawkins is a son of a deceased child of said Jane Hawkins. Appellant Grace D. Follansbee is an aunt of Mrs. Caldwell, while appellants Charles, Nellie W. and Merrill Fowler, Ida Pendexter and Grace Wiseman are children of a deceased brother of her father. Appellants Compton, Dinwiddie and James R. Barr are named in the will as executors and trustees. Appellant Kathryn M. Sumner became a member of the household of Mrs. Caldwell's parents when she and testatrix were each thirteen years of age, and, after the death of the parents, lived with testatrix. The other appellants are named in the will as beneficiaries. The fee simple of the greater part of the real estate was devised to the trustees for charitable purposes.

The will in question was executed October 1, 1909, and the codicil was made October 23, 1911. Mrs. Caldwell died January 20, 1912. In January or February, 1909, she had executed a will in most respects similar to the one in question. The complaint alleges that when the will and codicil were executed, Mrs. Caldwell was of unsound mind; that the execution of the will and codicil was each procured by undue influence; that each was unduly executed.

Appellees submitted twenty-three interrogatories for answer by the jury while appellants submitted one hundred and twenty-two. In answer to appellees' interrogatories, the jury made a finding in relation to a certain supposed influence exercised by the supposed spirit of testatrix's deceased father or husband, on her, while executing the will, she being found a believer in spiritualism. It also made a

finding in relation to a supposed delusion founded on a belief by Mrs. Caldwell that she had been ordered out of the house of her aunt, Jane Hawkins. It is claimed by appellants that by the answers to interrogatories the jury found the testatrix was possessed of full testamentary capacity; that the will was signed and attested in conformity with statutory requirements; that the purported findings on the issues of undue influence and insane delusions must be rejected for certain reasons stated, which reasons we deem it unnecessary to set forth; that consequently the court erred in overruling appellants' motion for judgment on the answers to interrogatories, notwithstanding the general verdict. The position assumed is wholly untenable.

The general verdict finds for the plaintiffs (appellees) generally, which, because a whole of a thing includes each part thereof, must be held a finding for plaintiffs on each issue involved. The allegation of undue execution was sufficient to tender any issue of duress, undue execution or fraud that might be shown by the evidence. *Kenworthy* v. *Williams* (1854), 5 Ind. 375; *McDonald* v. *McDonald* (1895), 142 Ind. 55, 63, 41 N. E. 336; *Thompson* v. *Miller* (1914), 182 Ind. 545, 107 N. E. 74. While in actions governed by the civil code, a plaintiff must state each cause of action in a separate paragraph, such particularity is not required in the special proceeding to contest a will, and under the general allegation of undue execution the plaintiff may prove as many separate causes of action based on duress, undue influence or fraud, as he has evidence to support. *Kenworthy* v. *Williams, supra.* Undoubtedly a plaintiff may plead in separate paragraphs as many distinct causes of action, grounded on duress, undue influence and fraud, as he may desire, but he is not compelled to do so; here plaintiffs pleaded generally, and only two possible methods are open to discover the particular issues that were tried—resort to the special findings, or the

evidence. The findings do not show an absence of fraud, duress and undue influence, and in reviewing a trial court's ruling on a defendant's motion for judgment on answers to interrogatories, resort to the evidence is precluded. This question has been so decided, by the courts of appeal of this State, hundreds of times. A partial list of the cases so holding may be found in the five columns devoted to such purpose in 9 Ind. Dig. Ann. 822, 823, 824. The decisions of the question are uniform and consistent and cover a period of more than half a century during which the statute in relation to the submission of interrogatories has been twice reënacted. §546 R. S. 1881, Acts 1881 (s. s.) p. 240; §572 Burns 1914, Acts 1897 p. 128. The reënactments, under the circumstances, adopted the previous constructions of the act by this court. *State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113, Ann. Cas. 1914 D 1306. Were we of the opinion that all those consistent decisions are erroneous we would be without rightful authority to overrule them, because this court is vested with no legislative power. Appellants' motion for judgment was correctly overruled, for if it be conceded that full testamentary capacity is found, and that the finding relating to undue influence must be disregarded, yet it must be presumed on the face of the record that the jury found for plaintiffs on some issue of duress, fraud or undue influence.

There was evidence given to show that Mrs. Caldwell was a believer in spiritualism, and that she was of unsound mind. Appellants contend that the court erred in refusing to give their requested instruction No. 48, reading as follows: "The jury are instructed that under the evidence in this case, there is no question upon the subject of spiritualism that has any bearing upon the question before the jury." There was no error. It is true that a belief in spiritualism, of itself, in nowise impairs the right of testamentary disposition more than does a credence in any other religious doctrine,

or system of philosophy. Our Constitution guarantees religious liberty and the statutory right to make a will is not limited to those who discard a belief in any particular cult, dogma or principle. *Steinkuehler* v. *Wempner* (1907), 169 Ind. 154, 81 N. E. 482, 15 L. R. A. (N. S.) 674, and monographic note thereto.

But a belief in any religious doctrine, philosophical system or science may be vitally material, in connection with other facts and circumstances, in determining the question of one's testamentary capacity. The evidence here shows that by the will signed in January or February, 1909, testatrix made a bequest to Clara Becker, a spiritualist, and that the will in question omits any gift to such person. This and other circumstances disclosed by the evidence made the belief in spiritualism a proper matter for consideration.

Appellants' counsel earnestly contend that the verdict is not sustained by sufficient evidence. This claim is asserted on each of two theories, viz., (1) that the evidence, considered as a whole, regardless of answers to interrogatories, is not sufficient; (2) but should the court hold otherwise, it is claimed that the general verdict is entirely unsupported on all issues except on those where the jury found specially in appellants' favor, and, in determining the question of the sufficiency of the evidence, the court must consider the answers to interrogatories, where the same are supported by any evidence.

Appellees meet the first contention with the assertion that much competent evidence was given in behalf of appellees which shows that testatrix was of unsound mind, 8. and that each of at least seven nonexpert witnesses, after stating that he had observed the testatrix, her actions and appearance, and after detailing certain other facts, expressed his opinion that at that time she was of unsound mind. Appellants contend that no fact detailed by any of such witnesses shows mental unsoundness; that the sole test of the opinion must be the detailed facts on

which it was based, and that when so tested each opinion must be disregarded. We can not accept this view of the law. Opinion evidence of nonexperts rests on a rule of necessity. If the witness could detail all the facts accurately, the opinion would be superfluous, as the jury is as well qualified as the witness to draw the proper conclusion. But there may be many things in the appearance and acts of a person whose mental condition is under investigation that can not be fully and accurately described in words, but which nevertheless form a reliable basis for a conclusion, and because of such fact a lay witness who has observed the appearance and deportment of the subject of inquiry may give his opinion as to mental condition. *Stephenson* v. *State* (1887), 110 Ind. 358, 11 N. E. 360, 59 Am. Rep. 216; *Cline* v. *Lindsey* (1887), 110 Ind. 337, 11 N. E. 441. We are not at liberty to wholly reject the opinion evidence for the reasons stated. Besides, there is other evidence of unsoundness of mind, and, in the absence of a consideration of the special findings, we are not warranted in holding that the general verdict, on the issue of testamentary capacity, was unsupported.

When the insufficiency of the evidence is the reason urged for a new trial, and where, as here, there are several issues, must this court consider the special findings of the jury, in connection with the evidence, to determine the question? If so, we must accept as binding the special findings of the jury on any issue where they are supported by any evidence. The submission of interrogatories to juries was unknown to the common law. The practice originated in Massachusetts at an early day, when, if a judge was surprised at a verdict, it was not unusual to ask the jury upon what principle the verdict was found. In making bills of exceptions, or in determining the sufficiency of the evidence to support the verdict, it was held that the court might consider such questions and answers. *Lawler* v. *Earle* (1862); 87 Mass. 22; *Mair* v. *Bassett* (1875), 117 Mass. 356.

A similar practice was recognized in New York before the adoption of its code in 1848. 2 Thompson, Trials §2667. When the New York code was adopted, a section was inserted which provided that where the jury returns a general verdict the court may instruct it to find specially on one or more facts, stated in writing. Code Civ. Proc. §§1187, 1188. When our code of civil procedure was adopted in 1852 it provided that in all cases, on request, the court shall instruct the jury, if it renders a general verdict, to find specially on particular questions of fact stated in writing, and that such finding shall be recorded with the verdict. 2 R. S. 1852 p. 114, §336; 2 R. S. 1876 p. 171. It was reënacted in the revision of the code in 1881. §546 R. S. 1881, *supra*. It was repealed in 1895 (Acts 1895 p. 248), and reënacted, with slight changes in phraseology, in 1897 (Acts 1897 p. 128, §§572, 573 Burns 1914), and has since remained in force. The act of 1897 requires a special finding on particular questions of fact, *on any or all* issues in the cause. The very language of the statute repels the inference of a legislative intent to limit the use of the special findings as a mere basis for a judgment, notwithstanding the general verdict, because, in such case, it would be useless to submit interrogatories unless on all issues. The practical construction of the law has not so limited the function of the findings, for it has been uniformly held that they may cure intervening errors, such as giving erroneous instructions, overruling a demurrer to a bad paragraph of answer, etc. *Worley* v. *Moore* (1884), 97 Ind. 15; *Burgett* v. *Teal* (1883), 91 Ind. 260; 2 Thompson, Trials §2699. While the reasons for the enactment of the statute of 1852 were yet fresh in the minds of those composing the bench and bar of Indiana, this court, in *Buntin* v. *Rose* (1861), 16 Ind. 209, stated some of the evils against which the enactment was directed, as follows: "Before the enactment of our statute, enabling a party to ask that a jury shall respond to interrogatories, it was difficult to have placed upon

the record of a trial, the component parts of, or elements which entered into and formed, the verdict of a jury. This was felt, and considered as operating injuriously in many instances, because of the current of decisions in this Court for many years, to the effect that a verdict in a civil case should not be disturbed on the evidence, where there was proof tending to sustain it.'' Our attention has been called to only five Indiana cases where this question has been presented, but appellants' position is sustained by each decision. The cases are *Terre Haute, etc., R. Co. v. Clark* (1880), 73 Ind. 168; *Cincinnati, etc., R. Co. v. Darling* (1892), 130 Ind. 376, 30 N. E. 416; *National Biscuit Co. v. Wilson* (1907), 169 Ind. 442, 82 N. E. 916; *Ittenbach v. Thomas* (1911), 48 Ind. App. 420, 96 N. E. 21; *Evansville, etc., Traction Co. v. Spiegel* (1912), 49 Ind. App. 412, 94 N. E. 718, 97 N. E. 949. *Staser* v. *Hagan* (1889), 120 Ind. 207, 21 N. E. 911, 22 N. E. 990, is cited by appellees, but the case is not in point. There was no conflict there between the special findings and general verdict. It will be noted in *Terre Haute, etc., R. Co. v. Clark, supra,* in an opinion by Woods, J., the court held that resort would be had to the special findings covering only a part of the issues of contributory negligence. To withhold consideration of special findings in some cases would result in affirming judgments where the court of appeals knows that the verdict was rendered on an issue entirely unsupported by evidence. The statute providing for such findings was intended to prevent such miscarriage of justice. *Buntin* v. *Rose, supra.* Appellants' contention is sustained by reason and authority, and we hold that the special findings here must be considered in determining the sufficiency of the evidence.

On the question of testamentary capacity, the jury finds that both the will and codicil were drawn by Mrs. Caldwell's counsel, Lee Dinwiddie, who followed her directions in the preparation of the same; that after each instrument was prepared he submitted it to her, and it was read to or by

her, so that she understood its provisions before signing it; that when she directed Dinwiddie as to what she desired embraced in the instrument, and when read, and when signed, she had sufficient mental capacity to understand the business in which she was engaged with respect to the preparation and execution of the instrument, and at the time of the preparation and execution thereof she had sufficient mental capacity to know, in a general way, the extent and value of her estate, the number and names of those who would be supposed to be the natural objects of her bounty, their deserts with respect to their treatment of her, and their financial conditions with respect to being or not being in need of financial assistance from her; that when each instrument was executed she was capable of understanding and acting with ordinary discretion in the ordinary affairs of life, and was *sane*. There was evidence to support each finding.

The jury also found that testatrix executed a will in January or February, 1909, containing with a few minor exceptions, the same provisions found in the will in controversy. Substantially the same findings are made in regard to her capacity then as when she executed the will and codicil in question. It also found that before executing the will of October 1, 1909, she had various consultations with Mr. Dinwiddie respecting changes she desired to make in the will of January or February preceding, and that she destroyed this will on October 1, 1909. Counsel for appellees say the finding that testatrix was "sane" must be rejected, because it is a conclusion, and cite *Todd* v. *Fenton* (1879), 66 Ind. 25. In view of the conclusion we have reached, we deem it unnecessary to decide this question, because we arrive at the same result by disregarding the answer as by considering it.

11. Counsel for appellees also say that the preceding finding in relation to capacity to understand and act with discretion in the ordinary affairs of life must be rejected, because it states a conclusion rather than a fact. We

hold otherwise. *Todd* v. *Fenton, supra.* Appellees claim that a finding of testamentary capacity must include, (1) sufficient mind and memory to enable the testator to know the extent and value of his estate, (2) the number and names of the persons who are the natural objects of his bounty, (3) their deserts with reference to their treatment of him, and (4) sufficient memory that he can keep these things in mind long enough to have his will prepared and executed, and that there is nothing in the findings complying with the *fourth* requisite. While it is not necessary that the testator should actually have remembered such facts, he must have had sufficient memory that he could have kept them in mind long enough to have his will prepared and executed. *Roller* v. *Kling* (1898), 150 Ind. 159, 164, 165, 49 N. E. 948; Page, Wills §98. The law prescribes no set form for interrogatories of this nature. Here it was found that the lawyer followed testatrix's directions in preparing the will; that thereupon it was submitted to her and read to or by her, and that she understood its provisions before signing; that when she gave the directions, and when the will was read and signed, she had sufficient mind to understand the business in which she was engaged, and when signed she had capacity to understand and act with ordinary discretion in the ordinary affairs of life. We are of the opinion that the findings here, disregarding the one that she was sane, necessarily include all things pointed out in the fourth requisite above, and show that testatrix was possessed of testamentary capacity when the will and codicil were executed. *Young* v. *Miller* (1896), 145 Ind. 652, 44 N. E. 757; Page, Wills §97.

The jury made two findings on issues tendered on the subject of insane delusions; one in relation to Mrs. Caldwell having been ordered out of the house of her aunt Jane Hawkins, and the other in regard to a supposed request by the spirit of her deceased father to "do more" for Mrs. Sumner. The latter transaction is also treated by counsel for

appellees as an exercise of undue influence. Counsel for appellants claim that the findings on testamentary capacity, set out above, exclude the existence of any insane delusion affecting the will, and that if it be conceded that the jury made any sufficient finding in reference to a delusion (which they deny) it should be rejected; but that, in any event there was no evidence to warrant a finding that there was such delusion. After setting out the test of testamentary 14. capacity recognized by the great weight of authority, it is said in Page, Wills §97: "While not necessary it is perfectly proper to qualify such a rule by adding that an insane delusion directly affecting the will may destroy testamentary capacity."

Where one special finding, supported by evidence, is followed by a contradictory one, also sustained by some evidence, the findings nullify one another. Of course 15. no such result follows if one of them is unsupported by evidence. It results that if there is any evidence here to support a finding of an insane delusion, 16. directly affecting the will, it must be held that such delusion operated to destroy Mrs. Caldwell's testamentary capacity. The jury found specially that when the will was executed in October, 1909, Mrs. Caldwell believed that in the fall of 1904, Mrs. Hawkins had ordered her out of the latter's house, and because of such belief had a feeling of resentment against Mrs. Hawkins and her children, which affected the will, and that such belief was deep rooted and could not be overcome by persuasion or argument. There was evidence that in the fall of 1904, Mrs. Caldwell told Mr. Barr and Mrs. Brooks that Mrs. Hawkins had ordered her out of the house; that said incident was one of the causes of a dislike of Mrs. Hawkins by Mrs. Caldwell; that afterward Mrs. Caldwell was not friendly with two of Mrs. Hawkins' four daughters, appellees Mrs. Bond and Mrs. Ditton. There was no evidence that Mrs. Caldwell ever had any communication with

any one on the subject of being ordered out of the house, except as above stated, and neither Mr. Barr nor Mrs. Brooks said anything to testatrix on the subject. Mrs. Bond and Mrs. Ditton testified that they were present on the occasion referred to by Mrs. Caldwell in the statements to Mr. Barr and Mrs. Brooks in the fall of 1904, and that their mother did not order testatrix out of the house, and did not say anything on the subject thereof. The testatrix was always friendly with Mrs. Hart and Mrs. Jewell, the other daughters of Jane Hawkins.

Appellants' counsel claim that there is no evidence that warrants a finding that testatrix ever cherished a spirit of resentment against the children of Mrs. Hawkins, because of the incident in regard to the ordering out of Mrs. Hawkins' house; that as to Mrs. Hart and Mrs. Jewell, the evidence excludes such inference; that there is no reasonable ground for inferring, in any event, that if Mrs. Caldwell was unfriendly to Mrs. Hawkins, because of the belief that she had been ordered out of the latter's house, that such belief caused her to cherish an enmity towards her children. Counsel further say, that if all the above things be conceded, that there is an entire absence of evidence to show that testatrix was possessed of an insane delusion, because there is no testimony to show that there was any evidence, presented to testatrix to convince her of the falsity of her belief, nor was there any argument or persuasion used by any one to dissuade her therefrom. Testamentary capacity is not affected by a delusion merely—it must be an insane one. Schouler, Wills §§162, 163; *Stevens* v. *Leonard* (1900), 154 Ind. 67, 56 N. E. 27.

It is difficult to formulate any general definition of an insane delusion that is satisfactory. Notes to *People* v. *Hubert* (1897), 63 Am. St. 80; *Slaughter* v. *Heath* (1907), 27 L. R. A. (N. S.) 1; Page, Wills §104. An insane delusion is much more than a mistake of fact.

Such mistake, in itself, does not even tend to show insane delusion. *Maynard* v. *Tyler* (1897), 168 Mass. 107, 46 N. E. 413; *In re White's Will* (1890), 121 N. Y. 406, 24 N. E. 935; Page, Wills §105. In *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 433, 90 N. E. 766, this court approved the following definition: "An insane delusion is a spontaneous conception and acceptance of that as a fact which has no existence except in the imagination, and which is persistently believed in against all evidence and probability". *Rush* v. *Megee* (1871), 36 Ind. 69, 80. In *Bundy* v. *McKnight* (1874), 48 Ind. 502, 512, the court approved the following: "An insane delusion exists when a person imagines that a certain state of facts exists which have no existence at all, except in the imagination of the party, and which false impression can not be removed   *   *   *   by any amount of reasoning and argument." *McReynolds* v. *Smith* (1909), 172 Ind. 336, 346, 86 N. E. 1009. In this case the trial court in its instructions, adopted the definition given in *Bundy* v. *McKnight, supra.* In Page, Wills §107 it is said that possibly the most valuable practicable test is that the mistaken belief cannot be removed—or permanently removed —by evidence; that a mistake of a sane person is always susceptible of correction. Of course, there may be a belief, the falsity of which can not be disproved by evidence, such as, for example, the supposed appearance of an angel to a testator, at night, when alone. Here, however, we are dealing with a mistake that could be disproved by evidence, and with a belief of the existence of a thing neither inherently impossible nor improbable. There was no evidence presented to testatrix of the mistake in her belief nor was there resort to argument or persuasion to convince her of its falsity. There is not even any direct evidence that the supposed belief found lodgment in her mind between 1904 and 1909. There was no evidence that warranted a finding of any insane delusion founded on such belief. *Morgan* v. *Morgan* (1908), 30 App. Cas. (D. C.) 436,

13 Ann. Cas. 1037; *Young* v. *Montgomery* (1903), 161 Ind. 68, 67 N. E. 684.

The jury found specially that Mrs. Caldwell was a believer in spiritualism, and believed that prior to the execution of the will she communicated, by means of spiritualistic mediums, and automatic writing, with the spirits of her deceased father and husband, and, in one of such communications, was told to give appellee Kathryn Sumner more of her property than she had given by a certain deed. The will in question does give more property to Mrs. Sumner than was conveyed by the deed. Appellants claim that the supposed spirit message considered as either an insane delusion or as undue influence, did not affect the will, and that this fact is affirmatively shown by the evidence.

It may be conceded that, generally, a will dictated by supposed spirits, can not stand. *Steinkuehler* v. *Wempner, supra.* However, in one case, where the will was reasonable, it was held valid though the testator believed he made it according to the advice of spirits. *In re Storey's Will* (1886), 20 Ill. App. 183; Page, Wills §420. Here, the supposed beneficiary of the message, appellee Kathryn Sumner, is not shown to have had any connection with the spiritual advice, or knowledge thereof. While undue influence is generally exerted by the beneficiary, yet a will may be invalidated because of undue influence of which the beneficiary was ignorant. Page, Wills §129. Nevertheless if the influence under investigation did not induce the testator to make some gift in the will, it cannot be held undue. *Todd* v. *Fenton, supra.*

The theory here of undue influence by spirit advice is founded on the evidence given by Clara Becker, a spiritualist, who was in the employ of testatrix during the year, 1909. She testified on direct examination by appellees, that at sometime between July 1, and October 1, 1909, Mrs. Caldwell was engaged in "spirit writing"

and received a communication from the spirit of her deceased father which requested her ''to do more for Mrs. Kathryn Sumner''. On cross-examination she said the communication might have been ''you should remember Kate'', or ''do different with Kate''. Appellants claim that in view of the cross-examination the jury was not warranted in finding that the supposed communication requested testatrix to ''do more'' for Mrs. Sumner. We hold otherwise. The reconciliation of apparent conflicts between evidence of a witness on direct and cross-examination is within the rightful province of the jury. *Peabody-Alwert Coal Co.* v. *Yandell* (1913), 179 Ind. 222, 100 N. E. 758. The communication had no express reference to property, and appellants contend that inasmuch as Clara Becker testified that during the summer of 1909 an unfriendly feeling existed between Mrs. Sumner and testatrix, that the message should be considered as referring to Mrs. Caldwell's personal relations to Mrs. Sumner. Of course neither courts nor juries may inquire into the intents or purposes of disembodied spirits. Judicial tribunals are not, and could not be, invested with such power. The object of appellees, in adducing the testimony, was to show that Mrs. Caldwell believed in the reality of the supposed message, and acted on it in making a devise to Mrs. Sumner. What construction she put on what she supposed was a message from her father's spirit was a legitimate subject of investigation. The same witness testified that before the time of the supposed spirit communication Mrs. Caldwell had discussed the subject of changing her will and had consulted her lawyer, Mr. Dinwiddie, about the matter. Another witness of appellees, Mrs. Caird, of Chicago, who professed to be a spiritualistic medium, testified that during the summer of 1909 she got for Mrs. Caldwell a spirit communication from her deceased husband in reference to a will she intended to make. We are of the opinion that the jury was warranted in inferring that Mrs. Caldwell believed

that the supposed spirit message requested her, in making or changing her will, to do more for Mrs. Sumner than she had done.

On April 2, 1909, Mrs. Caldwell was the owner of over 6,300 acres of valuable farm land, and on that day conveyed one section of it, containing 628 acres, to Mrs. Sumner, for life. The jury found specially that in January or February, 1909, after the death of her husband and before the death of her father, which occurred in March, 1909, testatrix executed a will which was attested by two witnesses who signed the same in the presence of testatrix, and in the presence of each other; that by the terms of the will, after some minor personal bequests, she devised and bequeathed all her property to her father, for life, and after his death to appellee Kathryn Sumner, for life. This will was destroyed on October 1, 1909, when the will in question was executed. The will in controversy devises to Mrs. Sumner only *one-third* for life, of the residue of the net income of the estate. It is appellees' theory that the will in contest, while devising less to Mrs. Sumner than the former will, does "do more" for her than was done by the *deed* of April 2, 1909; that the deed constituted the only gift made to Mrs. Sumner in Mrs. Caldwell's lifetime, and that she so construed what she supposed was a real communication from her deceased father. Such theory is untenable, and the jury was not warranted in inferring that the will in controversy "does more" for Mrs. Sumner than had been done when the supposed spirit communication was received during the summer of 1909. Of course no title could vest in Mrs. Sumner by the devise of January or February, 1909, until after Mrs. Caldwell's death. So of the will in controversy. Had Mrs. Caldwell not revoked the former will, Mrs. Sumner would have fared better than under the present one. The former was not revoked until October 1, 1909. The revocation was pursuant to statutory authority. §3115 Burns 1914, §2559 R. S. 1881. Appellees'

theory is that the supposed communication, as understood by Mrs. Caldwell requested her to ''do more'', in her contemplated new will—ambulatory—for Mrs. Sumner. Why use the contemplated will as a basis of determining when more should have been done, and reject the one already signed? If Mrs. Caldwell understood the request as only applicable to vested gifts, its relevancy to the will in controversy disappears. We hold that there was no evidence that warrants the finding that any supposed spirit message affected the will, whether the matter be considered from the standpoint of either an insane delusion or of undue influence.

The evidence discloses a fiduciary relation between Mrs. Caldwell and her attorney Lee Dinwiddie who drew both the will and codicil, and also the will that was destroyed. While Dinwiddie was not a devisee or legatee, he was appointed one of the executors and one of the trustees charged with the execution of a large number of important trusts. Counsel for appellees claim that the jury was warranted in inferring from the evidence that the will was procured by the undue influence of Lee Dinwiddie. We deem it unnecessary to set out the evidence on such issue, which consists, in the main, of testimony given by Mr. Dinwiddie. If it be conceded that the evidence warrants the suggested inference, it must be conceded also that the jury was warranted in finding that the execution of the will was Mrs. Caldwell's act, and not affected by any undue influence of Mr. Dinwiddie. *Compher* v. *Browning* (1906), 219 Ill. 429, 76 N. E. 678, 109 Am. St. 346. The jury found specially that before the execution of the will of January or February, 1909, Mrs. Caldwell had various consultations with her lawyer about the provisions of her proposed will, and that Mr. Dinwiddie wrote it according to her directions; that before the execution of the will of October 1, 1909, she had various conferences with Mr. Dinwiddie relating to proposed changes in her will; that Dinwiddie drew the will of October 1, 1909, and in doing so followed her directions

in regard to each bequest and desire contained in the instrument. Like findings were made in reference to the codicil. In *Wiley* v. *Gordon* (1914), 181 Ind. 252, 266, 104 N. E. 500, it was said: "Undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it was made. It must be an influence of such compelling force that the apparent testator is but the instrument by which the mastering desire of another is expressed, so that the supposed will, or the particular part in question, is not the will of the testator except in the sense that he has consented to put his name to it in the form in which it appears."

We are of the opinion that the special findings of the jury exclude the theory of the exercise of undue influence, by Lee Dinwiddie, and that such findings are warranted by the evidence. There was no evidence that warranted any finding of fraud, duress or undue execution in relation to the execution of either the will or codicil, except as stated, and it must be held that the evidence considered in connection with the special findings, is insufficient to support the verdict. Judgment reversed with instructions to grant appellants' motion for a new trial.

## On Petition for Rehearing.

Morris, J.—Appellees have filed an earnest and able brief on their petition for rehearing, in which they seek a reconsideration of the questions decided adversely to their contentions. It is especially urged that manifest error appears in the decision that an appellate court, in determining the alleged insufficiency of the evidence to support a general verdict, may consider the special findings of the jury, on one or more of several issues joined.

It is insisted that *Evansville, etc., Traction Co.* v. *Spiegel* (1912), 49 Ind. App. 412, 94 N. E. 718, 97 N. E. 949, cited with approval in the original opinion, is not an authority

binding on this court, especially when considered in connection with the dissenting opinion of Hottel, J., concurred in by Felt, J. Regarding this contention it is sufficient to say that while no petition to transfer was filed in that case, and while it was not considered by this court previous to the original hearing of this cause, we did not on such hearing overlook the reasoning of the dissenting opinion in the Spiegel case, yet, nevertheless, we are of the opinion that the rule declared in the majority opinion in that case is the correct one. It is further claimed that *Staser* v. *Hagan* (1889), 120 Ind. 207, 228, 21 N. E. 211, 22 N. E. 990, supports appellees' contention and they note the following paragraph appearing in that opinion: "The motion is for a new trial, assigning as a reason that the verdict of the jury is not supported by the evidence. In such case the attention of the court is not called to the interrogatories and the answers thereto, but it is directed to the evidence in the cause. It is the duty of the court to examine the evidence, and if it supports the general verdict the motion should be overruled, without any regard to the manner in which the answers to interrogatories are made." On the same page where the above paragraph is found, the court uses the following language: "In a case like this, where there is *nothing in the record to indicate that the jury did not base its verdict upon the charge which the evidence tends to support*, we think it wholly immaterial whether the answers to interrogatories addressed to another branch of the case are supported by the evidence or not supported. If the general verdict is supported by the evidence, *in such case*, the motion for new trial, assigning for reason that the verdict is not supported, should be overruled." (Italics ours.) As stated in the original opinion, there was, in *Staser* v. *Hagan, supra,* no conflict between the special and general findings. No question was there presented of the sufficiency of the evidence to sustain the general verdict on one issue, where the jury had specially found for appellant on another. As

stated in that opinion, on page 227: "It is not claimed that the answers to these interrogatories are in conflict with the general verdict, but it is contended by the appellants that the answers to the interrogatories are not supported by the evidence. It is contended that such an open disregard of the evidence, in particular and material things, as is exhibited in this case, inexorably undermines the general verdict, and requires that it should be set aside as an unsupported verdict." We are satisfied that nothing decided in that case is in conflict with our original holding here.

Appellees urge upon our consideration a declaration found in the first opinion delivered in *Lake Erie, etc., R. Co.* v. *McFall* (1904), 72 N. E. 552, reading as follows: "Appellant's counsel argue that the evidence is insufficient, on the assumption that the answers to interrogatories serve the purpose of excluding the hypothesis that negligence existed with reference to providing a sufficient spark arrester. The rule in this court is that, on assignments of grounds for a new trial which question merely the sufficiency or legal effect of the evidence, the court will not consider answers to interrogatories." Following the above, appears this declaration: "But even upon the hypothesis of the correctness of the jury's answers to interrogatories, we think that the case was made out." The above opinion affirming the judgment, was delivered on November 29, 1904. Subsequently a rehearing was granted and a new opinion reversing the judgment, was handed down on December 5, 1905. *Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574, 76 N. E. 400. This opinion omits the declaration on which appellees here rely, and fails to determine that question, though presumably presented by the record. Inasmuch as the apparent authority of the first opinion was rendered null and void by the granting of the petition for a rehearing, we fail to perceive how it can be seriously urged that we should now be bound by a declaration found in an opinion that was, afterward, without dissent, discarded by the

Barr *v.* Sumner—183 Ind. 402.

court. What the court, on rehearing might have held had it been deemed necessary or proper to determine the question, must remain a matter of speculation. It is significant however, that only two years after the delivery of the first opinion in the McFall case, in *National Biscuit Co.* v. *Wilson* (1907), 169 Ind. 442, 82 N. E. 916, this court, without dissent, declared the rule which we have followed in our original opinion. In the meantime, there was but one change in the personnel of the bench, Dowling, J., having been succeeded by Montgomery, J.

Appellees also call our attention to *Chicago, etc., R. Co.* v. *Kennington* (1890), 123 Ind. 409, 24 N. E. 137; *Board, etc.* v. *O'Connor* (1894), 137 Ind. 622, 35 N. E. 1006, 37 N. E. 16; and *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381, 391, 74 N. E. 509. A consideration of these cases impels the conclusion that nothing therein decided conflicts with our original determination in this case, and to which we adhere. We have again considered the other questions presented by appellees' petition, but are satisfied that the conclusions assailed are correct. Petition for rehearing overruled.

NOTE.—Reported in 107 N. E. 675; 109 N. E. 193. As to insane delusions affecting testamentary capacity, see 12 L. R. A. 161; 27 L. R. A. (N. S.) 62; L. R. A. 1915 A 458. As to the effect of belief in spiritualism upon testamentary capacity, see 15 L. R. A. (N. S.) 674. For the weight of nonexpert opinions as to sanity or mental capacity, see 38 L. R. A. 745. See, also, under (1) 38 Cyc. 1915 Anno. 1902-new; (2) 40 Cyc. 1271; (3) 40 Cyc. 1339; 38 Cyc. 1927; (4) 38 Cyc. 1913 Anno. 1930-96; (5) 36 Cyc. 1153; (6) 40 Cyc. 1011; (7) 40 Cyc. 1283, 1335; (8) 17 Cyc. 142; 40 Cyc. 1038; (9) 40 Cyc. 1023; (10) 3 Cyc. 348; (11) 38 Cyc. 1921; (12) 40 Cyc. 1004; (13) 38 Cyc. 1930; (14, 17, 18) 40 Cyc. 1013; (15) 38 Cyc. 1926; (16) 40 Cyc. 1013, 1031; (19) 40 Cyc. 1149; (20, 26) 40 Cyc. 1144; (21) 40 Cyc. 2555; (22, 23, 24) 40 Cyc. 1031; (25) 3 Cyc. 348; 40 Cyc. 1358.