REPUBLIC CRESOTING COMPANY V. HIATT.

[No. 26,857. Filed June 9, 1937. Rehearing denied September 20, 1937.]

*Fesler, Elam, Young & Fauvre,* for appellant.

*Harry E. Yockey,* and *Owen S. Boling,* for appellee.

ROLL, J.—This is an action to recover damages resulting to appellee while working for and in the employee of appellant. The complaint is in two paragraphs and is of considerable length. We will epitomize sufficiently to make clear the questions presented. It is alleged that appellant is engaged in creosoting wooden blocks. That appellee was employed by appellant as a planer and that his regular employment in no way required him to handle or work with or near creosoted blocks, or that placed him in a position where he would breathe or come in contact with the fumes, gases and vapors from such creosoting plant or blocks.

Appellee's regular employment was confined to assisting appellant in preparing wooden blocks before they were processed with creosote. When the blocks were ready to be creosoted they were conveyed to a long covered shed with a roof and sides, but open on each end, and there placed in a large cage, made of steel slats and then placed in a steel cylinder which was then flooded with steam and creosote preparation at a high temperature. After the blocks had been subjected to such treatment for several hours, the steel cages, filled with treated blocks were pushed or rolled out of the cylinder for a distance of about one hundred feet to a shed where they were dumped. This shed is covered but has no sides. On January 31, 1929, appellee was ordered by appellant to go to the shed last above described and dump the creosoted blocks from the steel cages. Appellee protested to this assignment, on the ground that it was not within the scope of his employ-

ment, but appellant represented to appellee that the work was beneficial to his health and that an emergency had arisen that made it necessary for him to do this work and appellee did do the work requested. The following excerpt is taken from appellee's first paragraph of complaint:

"That at about two o'clock in the afternoon of said day defendant told plaintiff he would have to unload said blocks or help unload said blocks in said shed. Upon being so ordered and directed by defendant that said emergency existed and the insistence of defendant that said work in and around said creosoting process treating said blocks was beneficial to his health and being informed that in order to hold his position with defendant he must perform said work, plaintiff complied with said order and went to said shed and for a period of two hours or more under the orders and direction of defendant as aforesaid he did unload and assist in unloading said blocks which had been treated and which were being treated with said creosoting process by defendant; that in said building where plaintiff performed said service on said day the atmosphere was charged and filled with creosoting fumes, vapor and gases, the same coming from said cylinders, cages and said blocks; that from time to time during the said period during which he was in said building the said vapor, fumes and gases from said blocks filled the entire shed and at all such times he was in said shed and in particular when the blocks were dumped, the heat and the vapor, fumes and gases completely enveloped plaintiff and came in contact with his face and he was compelled to breath the same; that from time to time during said work in said shed plaintiff became sick as a result of working in said shed by being enveloped in and breathing said creosoting preparation, fumes, vapor and gases, more particularly hereinafter described."

That on February 2, 1929, appellant requested appellee to perform other services outside of his regular employment. This work was to be performed inside a box

car and consisted of sacking creosoted treated blocks for shipment. Appellee's complaint on this subject is as follows:

"Upon being so ordered and directed by defendant that said emergency existed and the insistence of defendant that said work in and around said creosoting process treating said blocks was beneficial to his health and being informed that in order to hold his position with defendant he must perform said work, plaintiff complied with said order and went to said box car hereinbefore described and for a period of about three hours under the orders and direction of defendant as aforesaid he did stack all of the said blocks in said box car, said blocks having been treated with said creosoting process by defendant; that in said box car where plaintiff performed said services on said Saturday afternoon the atmosphere was charged and filled with creosoting fumes, vapors and gases, the same coming from said blocks; that from time to time during the said period during which he was in said box car the vapor, fumes and gases from said blocks filled the entire box car and the fumes, vapor and gases completely enveloped plaintiff and came in contact with his face and he was compelled to breath the same; that from time to time during said work in said box car plaintiff became sick as a result of working in said box car by being enveloped in and breathing said creosoting preparation, fumes, vapor and gases more particularly hereinafter described."

Appellee further alleged:

"That at said times plaintiff was in perfect physical condition; that while in said box car and said shed as aforesaid, working with said blocks, cages and cylinders as aforesaid, filled said shed and said box car as aforesaid with heat, creosoting preparation fumes, vapors and gases enveloped plaintiff and he was unable to breath without breathing and inhaling said creosoting preparation, said fumes, vapors and gases into his head, throat and lungs and plaintiff's skin, pores and flesh and each and all of the internal organs of his body absorbed said creosoting preparation fumes, vapors

and gases all without fault or negligence upon the part of plaintiff, then and there and thereby causing plaintiff's entire body and system to be completely saturated with said creosoting preparation and said fumes, vapors and gases, then and there and thereby and as the sole and proximate result thereof causing plaintiff to become sick and to become totally incapacitated for work of any kind whatsoever.

"Plaintiff is unable to give a name to such sickness. Defendant informed plaintiff that he was inflicted with creosoting poison. Plaintiff further avers that his entire body is now and has continuously been saturated with said creosoting poison caused by the said wrongful, negligent, careless and unlawful acts of the defendant as aforesaid. . . .

"Plaintiff further avers that defendant was guilty of carelessness and negligence at all such times in this, that it wrongfully, carelessly and negligently directed plaintiff to perform said services outside the scope of his employment as aforesaid and wrongfully, negligently and carelessly told plaintiff that said work was healthful and beneficial employment and would not make plaintiff sick or be of any harm to him, when in truth and in fact defendant knew and by the exercise of reasonable care and prudence should have known, that said work was not healthful or beneficial employment, but on the contrary was decidedly harmful and detrimental to persons working in said room in and about said shed, box car, cages, cylinders and blocks in and about said creosoting preparation, fumes, vapors and gases, and that the same was harmful and unhealthful to plaintiff who was unaccustomed to working in and about said shed, box car, cylinder, cages, blocks, creosoting preparation, fumes, vapors and gases.

"Plaintiff further alleges that in the operation and conduct of said business in said shed and said box car where said work was being performed by plaintiff that there was accumulations of dangerous, noxious and deleterious gases, vapors and fumes, and that the same had continued for a period of ten years or more, from time to time, all of which was at all such times known to defendant, but unknown to plaintiff, and that the same did

accumulate at the times plaintiff became sick as hereinbefore described."

The complaint contains allegations as to the injuries alleged to have been sustained by reason of the negligence and carelessness therein set out. Appellee's second paragraph is in substance the same as the first with the additional averment that appellant failed to furnish him a gas mask while performing said services to protect appellee from breathing the gases, fumes and vapors arising from such creosoting blocks.

Appellant's demurrer to each paragraph of appellee's amended complaint was overruled. There was a trial by a jury and a verdict for appellee. Appellant filed a motion for a new trial which was overruled by the court, and judgment was entered in favor of appellee on the general verdict.

Special interrogatories were submitted to and answered by the jury. Appellant filed a motion for judgment on the interrogatories notwithstanding the general verdict, which motion was overruled. Proper exceptions were saved and presented for our consideration.

The view we take makes it necessary to consider only the fourth assignment of error which is as follows:

"4. The trial court erred in overruling the motion for judgment on the interrogatories and answers thereto filed by this appellant, who was defendant below, to which ruling defendant duly excepted."

The interrogatories submitted to the jury and the answers thereto are as follows:

"Q. 1. Was the plaintiff working as an employee of the defendant on January 31, 1929, in loading blocks?
Ans. Yes.
Q. 2. Were the injuries, of which he now com-

plains, caused by so working with creosoted blocks on January 31, 1929?

Ans. No.

Q. 3. Was the plaintiff working as an employee of the defendant in sacking blocks on February 2, 1929?

Ans. Yes.

Q. 4. Were the injuries, of which he now complains, caused by so working with creosoted blocks on February 2, 1929?

Ans. No.

Q. 5. Did the injuries, of which he now complains, arise out of his work in loading blocks on January 31, 1929?

Ans. Yes.

Q. 6. Did the injuries, of which he now complains, arise out of his work in sacking blocks on February 2, 1929?

Ans. Yes."

It is clear from appellee's complaint that the only cause of action stated or attempted to be stated is to recover damages caused by breathing or coming in contact with fumes, gases, or vapor arising or coming from creosote, or creosote treated blocks. The jury by its answers to interrogatories Nos. 2 and 4 clearly and specifically found that the injuries complained of were not caused by working with creosoted blocks. We are not unmindful of the well settled rule in this state that it is the duty of the court if possible to reconcile the answers to interrogatories so that they will not conflict with each other, and that where the general verdict and the special interrogatories and the answers thereto can be reconciled with each other under any state of facts probable under the issues, it is the duty of the court to do so. But, under appellee's complaint, no recovery could be had unless the evidence was sufficient to prove that the proximate cause of the injuries complained of was, as alleged in his complaint, the breathing and coming in contact with creosoted fumes,

gases and vapors. We again quote from paragraph one of his complaint.

"Plaintiff further avers that as a proximate result of the said wrongful, negligent, careless and unlawful acts of the defendant as aforesaid and by reason of plaintiff breathing and inhaling said creosoting preparation, said vapors, fumes and gases as aforesaid, his entire body, arms, hands, etc., . . ., became saturated with said creosoting preparation, vapors, fumes and gases, an became softened and perforated then and there and thereby and as the sole and proximate result thereof permanently damaging, etc."

The second paragraph has in substance the same allegations as above quoted from the first. If, as found by the jury in answer to interrogatories Nos. 2 and 4, appellee's injuries were not caused by working with creosoted blocks, then appellee has no cause of action upon which the verdict could rest. The very foundation of appellee's complaint was his working with creosoted blocks. We think it clear that the answers to interrogatories Nos. 2 and 4 cannot be true and also the general verdict, for the general verdict is a finding that the material averments of the complaint are true. When the answers to interrogatories are in irreconcilable conflict with the general verdict, the answers will control and the general verdict must fall. Section 2-2023 Burns Ind. St. 1933, section 356 Baldwin's Ind. St. 1934, is as follows:

"When the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

This question is fully discussed in the case of *Barr* v. *Sumner et al.* (1913), 183 Ind. 402, 107 N. E. 675.

Appellee insists that the answer to interrogatories Nos. 5 and 6 is in conflict with answer to Nos. 2 and

4, and therefore neutralize each other. We do not think the answer to Nos. 5 and 6 is necessarily in conflict with Nos. 2 and 4. The injuries complained of and described in appellee's complaint might have arisen out of the work of loading blocks or sacking blocks whether they had been subjected to the creosoting process or not. But before appellee was entitled to recover in this action the jury must find that appellee's working with creosote blocks was the proximate cause of appellee's injuries. This they did not do is conclusively shown by the answers to the second and fourth interrogatories. Under such a situation the trial court should have sustained appellant's motion for judgment on the answers to the interrogatories notwithstanding the general verdict. Other questions presented and discussed by appellant in his brief need not be discussed.

Judgment reversed with instructions to the trial court to set aside the judgment rendered herein and to sustain appellant's motion for judgment on the interrogatories and the answers thereto notwithstanding the general verdict, and enter judgment for appellant.